## R. KEMP PAYNE *vs.* MARGARET J. PAYNE, ET AL.

*Bill to Vacate a Decree for Fraud in Its Obtention—Insufficient Allegations of Fraud.*

A decree of a Court will not afterwards be annulled upon an original bill alleging fraud in obtaining it unless the fraud be extrinsic to the matters tried in the former case; and the decree will not be vacated for reasons which were presented to, and considered by, the Court in the former case.

The fraud relied on to set aside a decree must be actual and positive, and the particular acts of fraud must be distinctly alleged. A bill making vague and general allegations of fraud is demurrable.

A decree was made ratifying a sale· of the partnership property of a lunatic to his partner, who was also his brother, under a bill alleging that a sale of his property would be for the benefit of the lunatic. The allegations of the bill were proved and the valuations of the lunatic's property were made by competent and respectable witnesses. The decree was passed after a report by an auditor and master of the Court that he had found the valuation of the partnership property to be fair and that it would be for the advantage of the lunatic to ratify the sale. Seven years afterwards the lunatic, having been restored to reason and his committee discharged, filed the bill in this case to set aside the de-

cree of sale for fraud, alleging an unfair valuation of the partnership property and that the proceedings had been conducted to the injury of the plaintiff on account of the influence which his brother and partner had over his committee who was another brother. The proceedings in the former case were made a part of this. *Held,* that the bill fails to state such a case of fraud in obtaining the former decree as would justify the Court in vacating it.

Appeal from a decree of the Circuit Court of Baltimore City (SHARP, J.)

The cause was argued before BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Thomas Hughes,* for the appellant.

*George M. Upshur* and *Alfred S. Niles* (with whom were *Oscar Wolff* and *Clarence A. Tucker* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellant in the Circuit Court of Baltimore City on the 10th of January, 1903, to set aside for fraud a final decree which had been passed by that Court in another case on the 28th of February, 1896. The appellees demurred to the bill for want of equity in its allegations and for laches in filing it; and the present appeal is from the decree of the Circuit Court sustaining the demurrer and dismissing the bill.

The decree passed in 1896, which the appellant now asks to have set aside, ratified a sale to his brother and partner, E. Scott Payne, of the interest of the appellant, who was at that time a lunatic in charge of a committee, in the assets real and personal of the late hardware firm of E. Scott Payne & Bro. at a valuation that had been fixed by an appraisement. In December, 1897, nearly two years after the date of the decree complained of, the appellant having been restored to sanity was by an appropriate order of Court discharged from the custody of his committee and again placed in control of his own estate. In January, 1902, more than four years after

the appellant had been restored to the control of his own estate, E. Scott Payne, the brother to whom the sale of the partnership property had been made, died intestate, leaving a widow, who became his administratrix, and one child. One year later the present suit was brought against his widow in her own right and as administratrix and his child, and they are the appellees, now before us.

The substantial allegations made in the bill in the present case, as the grounds of the application to have the decree of 1896 set aside for fraud, are as follows :

1st. That in ascertaining the value of certain of the partnership real and leasehold property on Gay street in Baltimore City, for the purpose of the sale to E. Scott Payne, it was appraised " on the erroneous assumption " that the ordinance for the widening of Gay street would be repealed (it being then generally believed that such would be the case), whereby not only was the value of the property lessened but the appellant lost his share of the damages which had been theretofore allowed and were afterwards paid by the city to the purchaser when the street was in fact opened.

2nd. That the appraisement of the stock of merchandise was made by the appraisers upon statements rendered to them by E. Scott Payne, which "were so different from the true character and quality of the goods so appraised " as to cause the appraisal to be for less than one-half their true value.

3rd. That " no valuation was ascertained for the good will of the partnership " although it was in fact very valuable and that it was thereby obtained by E. Scott Payne without compensation.

4th. That certain property owned by the two brothers was ascertained by the decree of 1896 to be partnership property " in pursuance of testimony that said property had been treated by the partners as if it was partnership property " ignoring an existing understanding and arrangement between them that it was to be treated as property held by them individually as joint tenants.

5th. That all the proceedings in the case of *E. Scott Payne*

v. *R. Kemp Payne*, in which the decree of 1896 was passed, had been conducted in such a way "through the influence which the said E. Scott Payne had over his brother William James Payne who was the committee of the appellant" that the decree was arrived at and executed to the serious injury of the appellant and in violation and fraud of his rights.

In explanation of the delay in bringing his suit, the appellant avers in the bill that he had such unbounded confidence in his brother E. Scott Payne's integrity and in his interest in him that it never occured to him to question the rectitude of his brother's conduct relative to the purchase of the partnership property until a few weeks prior to filing the bill when he was informed that a certain gentleman, not naming him, had been requested by E. Scott Payne to act as an appraiser of the partnership merchandise but that he, upon observing the method of the appraisement had said that "the method was unfair and unjust in that the cost was estimated in such large job lots as to render it impossible to arrive at their correct value" and he had therefore declined to act as an appraiser. That the appellant having thus had his suspicions aroused employed counsel to examine the former case and by that means discovered the matters hereinbefore stated.

The present bill asks that the record in the case of *E. Scott Payne v. R. Kemp Payne*, a lunatic, in which the decree of 1896 was passed, be taken and considered as part of it and a synopsis of the proceedings in that case, containing copies of portions thereof, appears in the present record. We must therefore take into consideration the contents of those proceedings in determining whether or not the present bill is demurrable. From an inspection of them it becomes apparent that the former case was an amicable suit to procure the Court's ratification of the sale to E. Scott Payne of the lunatic's interest in the partnership estate on the ground that it would be for his interest and advantage.

The bill in the former case averred the previous existence of the partnership, the adjudication of the lunacy of R. Kemp Payne and the appointment and qualification of his brother,

Wm. James Payne as his committee. It contained a detailed statement of all the real and leasehold estate in question and a reference to the record of the conveyance by which the title to each lot had been acquired and also an allegation that all of the real and personal property had been purchased with partnership funds and used and enjoyed as partnership property although the legal title to three of the lots stood in the names of the two brothers as joint tenants and the title to the other three lots stood in their names as tenants in common. It further alleged the ownership by the firm of merchandise and debts due to them of great value and the practical absence of any indebtedness from them to other persons. The bill then averred that the partnership had been dissolved by the insanity of the defendant and that, with a view to protect the firm property from the sacrifice incident to a public sale, the plaintiff and the defendant's committee had entered into an agreement, subject to the approval of the Court, for the sale of the lunatic's share and interest therein to the plaintiff at a price which had been fixed by separate appraisements of the real estate and the merchandise and personal assets. The agreement for the sale stating its terms in detail and also the written awards of the appraisers as to the value of the several classes of the partnership property were filed as exhibits with the bill.

It further appears from the proceedings in that case that after the lunatic had been served with process and had answered by his committee testimony was taken in support of the allegations of the bill. From this evidence it appears that the real and leasehold estate had been appraised by Hiram Woods and George H. Sargeant, real estate agents of large experience and familiar with the value of real estate in the locality where the property in question was situated and that they had made the written report, filed as an exhibit, of their appraisement and that the report stated on its face that the valuation had been made upon the assumption that the ordinance for the widening of Gay street would be repealed and further stated that the prices fixed by them were fair and ex-

pressed the value of the property. It also appears that the stock of merchandise consisting of hardware had been appraised by Lloyd Cole of Wm. H. Cole & Son, and Henry Keidel of Henry Keidel & Co., leading hardware merchants of Baltimore, after a full and complete inventory of it had been made by two persons connected with their respective firms at their direction. Adam Wagner, one of the two persons who made the inventory testified that it was full and complete and contained all of the stock of the firm, and both he and Henry Keidel, one of the two merchants who appraised the merchandise, testified that they were thoroughly familiar with the prices of hardware and that the prices put upon the goods were fair and were the full value of the goods. Both Mr. Sargeant and Mr. Keidel testified that they had examined the agreement between E. Scott Payne and the committee of the lunatic for the proposed sale of the latter's interest in the partnership property and that its terms were fair and that it would be to the advantage of the lunatic to consummate it. Wm. James Payne the brother and committee of the lunatic also testified that it would be to his interest and advantage to consummate the sale. Testimony was also taken in support of the other allegations of the bill.

The case was then submitted for decree, but the Court before acting upon it referred it to one of the standing auditors and masters of the Court who made a very full report stating that he had carefully examined the proceedings in the case and that it appeared therefrom that the valuations of the partnership property as therein set forth were just and fair and that all of the real and leasehold lots had been purchased with the partnership funds and were partnership property and that it would be to the advantage of the lunatic that the agreement for the sale of his interest in the partnership estate to his brother and former partner E. Scott Payne be ratified and confirmed, which was accordingly done by the Court in its decree of February 28th, 1896.

The question now presented for our consideration is whether assuming the allegations of the present bill to be true they

make out a proper case for the cancellation for fraud of the decree of 1896 which was passed under the circumstances already mentioned by us. This question we are compelled to answer in the negative. It is well settled that a Court of equity has power, upon an original bill filed for that purpose, to set aside judgments or decrees for a positive and intentional fraud in obtaining them, but it is equally well settled that the final decrees and judgments of Courts of competent jurisdiction will not be lightly interfered with or be set aside for any matter which was actually presented and considered in the case in which the assailed decree was rendered. The acts for which a Court will set aside for fraud a former decree between the same parties must relate to frauds extrinsic to the matters tried by the first Court. We have so plainly stated this doctrine, with a full citation of the authorities sustaining it, in the recent case of *Maryland Steel Co.* v. *Marney*, 91 Md. 360, that we deem it unnecessary to here repeat what we have there said. See also the discussion of the same subject in *United States* v. *Throckmorton*, 98 U. S. 61, which we have heretofore held to be a leading case upon this question.

It is apparent upon the face of the proceedings in which the assailed decree of 1896 was passed that almost all of the matters now relied on as grounds for setting it aside were presented and considered in that case. It is plainly stated in the award of Messrs. Sargeant & Woods that they had appraised the real and leasehold estate upon the assumption that the ordinance for opening Gay street would be repealed. It was averred and proven to the satisfaction of the master and the Judge that the real and leasehold estate had been purchased with partnership funds and were in equity partnership property. It was apparent on the face of the contract of sale that nothing was allowed for the good will. It was proven that the inventory of the merchandise was made by the employees of the two highly respectable and competent hardware merchants who valued and appraised the goods, when inventoried, at what they regarded as fair valuations. The remaining allegation that all of the proceedings in that case

were so conducted through the influence of E. Scott Payne over his brother William who was the committee of the lunatic as to deprive the latter of his rights is the only one which brings forward transactions extrinsic or collateral to the matter tried in the former case.

That allegation when tested by the demurrer is defective because it does not definitely charge intentional fraud on the part of E. Scott Payne, merely averring that through his influence over his brother who was the committee of the lunatic that the decree of 1896 was arrived at and executed to the serious injury of the plaintiff and in violation and fraud of his rights. The fraud relied on to set aside a decree must be actual and positive amounting to the use of an intentional contrivance to take an undue advantage. *Patch* v. *Wood*, L. R., 3 Chy. App. 203, 212; *Kerr on Fraud and Mistake*, p. 365.

The charge last referred to is also insufficient as made in the bill because it is too general and fails to state the circumstances of the alleged fraud with which E. Scott Payne is charged. All charges of fraud in bills of complaint must be definitely made and the particular acts of fraud pointed out and stated, as it is from the facts alleged that the Court derives its jurisdiction. *Grove* v. *Rentch*, 26 Md. 367, 377; *Townsend* v. *Duncan*, 2 Bl. 48; *Beach, Mod. Eq. Pr.*, vol. 2, sec. 884.

The proceedings in the case, in which the decree of 1896 was passed seem, from the portions of them filed with the present bill as part of it, to have been conducted fairly and with due regard to the interests of the present plaintiff, who was then a lunatic. The allegations of the bill were supported by the testimony of competent and respectable witnesses and the action of the Court in decreeing the confirmation of the sale of his share of the partnership property was deliberately taken after requiring an examination of the entire proceedings by one of its auditors and masters and receiving from him a report that having carefully examined the proceedings and proof he found that the valuations of the partnership property were fair and just and that the evidence established

the fact that it would be for the interest and advantage of the lunatic to ratify the sale. The allegations of the bill of complaint in the present case present no sufficient grounds for disturbing a decree thus passed.

Having determined that no sufficient case is presented by the bill of complaint to justify the granting of the relief for which it prays, we deem it unnecessary to pass upon the question of laches in filing it.

The decree appealed from will be affirmed.

*Decree affirmed with costs.*

(Decided July 2nd, 1903.)