# ISRAEL BACHRACH *v.* WASHINGTON UNITED COOPERATIVE, Inc.

[No. 57, October Term, 1942.]

316

*Decided January 13, 1943.*

The cause was argued before SLOAN, JOHNSON, DELA-PLAINE, COLLINS, MARBURY, and GRASON, JJ.

*Daniel Ellison*, with whom was *Louis M. Strauss* on the brief, for the appellant.

*George B. Woelfel* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

In 1928 an association was formed in the City of Washington with the object of providing a place for a summer camp for Jewish children. A committee, consisting of Harry Bachrach, Dr. Hyman Colodny and Joseph A. Rinis, purchased for that purpose a farm on the Patuxent River in Anne Arundel County, Maryland. In acquiring the land as joint tenants, the three men assumed the mortgages thereon (the first for $1,400, and the second for $800)), gave a third mortgage for $1,900, and paid $871.04 in cash.

In 1929 the association was incorporated in the District of Columbia under the name of Washington United Cooperative, Inc. But during the following twelve years, Bachrach refused to become a member of the corporation, and threatened to sell his interest in the property unless he was paid the sum of $1,000, which he claimed he had contributed. The corporation, however, claimed that he had not contributed more than $200. In 1941 the corporation filed a suit to strike out a judgment which had been recovered by Maurice Haimowich, of Washington, against Bachrach on a confessed judgment note, alleging that the note had been given without consideration merely for the purpose of enabling Haimowich to sell the camp property under execution. Before the case was heard, Bachrach died and his interest in the real estate passed to the two surviving joint tenants. Shortly afterwards his brother, Israel Bachrach, appellant, purchased the first and second mortgages, which were in default, the third having been paid, and assigned the first mortgage to Louis M. Strauss, his attorney,

for the purpose of foreclosure. On August 1, 1941, the assignee sold the property at public auction to the appellant for $1,700. The sale was finally ratified by the court on September 5, 1941.

On November 10, 1941, the corporation brought the instant suit to set aside the foreclosure sale on the ground of fraud. The amended bill of complaint alleged that Israel Bachrach said "continued the efforts of his deceased brother to euchre and defraud the plaintiff corporation out of its property." The chancellor overruled a demurrer to the amended bill. It is the opinion of this court that the demurrer should have been sustained, because the amended bill did not allege specific charges of fraud. As the particular acts of fraud relied on must be specifically charged, a bill of complaint making only general allegations of fraud is demurrable. *Payne v. Payne,* 97 Md. 678, 685, 55 A. 368. It is also our view that the mortgagors and the assignee should have been parties to the suit. It is a fundamental rule that all persons interested in the subject matter of a suit must be made parties to it, for it is the constant aim of equity to award complete relief by determining the rights of all persons interested in a suit, thus settling the whole controversy and preventing future litigation. *Waring v. National Savings & Trust Co.,* 138 Md. 367, 114 A. 57. The United States Supreme Court has definitely held that a trustee who has sold property under foreclosure proceedings is a necessary party to a suit brought to set aside the sale. *Ribon v. Chicago, R. I. & P. R. Co.,* 16 Wall. 446, 21 *L. Ed.* 367.

In his decree passed on May 20, 1942, the chancellor rescinded the order of ratification of sale and annulled the deed from the assignee to the purchaser. The appeal is from that decree. Under the Maryland Mortgage Act, it is permissible to insert a clause in any mortgage authorizing the mortgagee or any other person named therein to sell the mortgaged property on such contingencies as may be therein expressed; but before the per-

son so authorized shall make such sale, he shall give bond to the State and shall give such notice as may be stated in the mortgage, and if there be no agreement as to notice, then he shall give twenty days' notice by advertisement of the time, place and terms of sale. Code, 1939, Art. 66, Secs. 6, 8, 9. The Act provides that the court having chancery jurisdiction where the sale is made shall have full power to hear and determine any objections which may be filed against the sale by any person interested in the property, and may confirm or set aside the sale. After confirmation by the court, and upon payment of the purchase money, the sale shall pass all the title which the mortgagor had in the property at the time of the recording of the mortgage. Code, 1939, Art. 66, Secs. 10, 12. Until a sale is reported by the mortgagee, the proceedings are *ex parte;* but after the report is made, an apportunity is afforded to all interested parties to make objections to the sale. Judge Bryan explained the Act as follows: "The purpose of this legislation was to provide a more expeditious, and less expensive, method of enforcing mortgages than the former proceeding by formal bill in equity, but not, by any means, to impair or defeat the right of the mortgagor to be heard in defense of his property; and in enabling him to make any objections against a sale, which would take away his title, the statute has preserved to him his unquestionable right to show that the mortgage was invalid, and therefore did not justify a sale of his property. Under a formal bill in equity, the court in a proper case decrees that a sale shall be made, and appoints a trustee to execute its decree; and, after the sale is made, it hears objections to the mode in which it has been conducted; but, in proceedings under the statute, the question of sale comes before the court for the first time when the sale is reported for ratification, and then all objections against the sale are to be heard and determined. The difference is that in the one case the propriety of making a sale is decided before the de-

cree is passed, and in the other all questions are decided on the ratification. The right of the mortgagor to make his defenses is the same in each case." *Albert v. Hamilton,* 76 Md. 304, 308, 25 A. 341, 342.

It is essential to the prompt administration of justice that the rule be inviolably observed that no court shall set aside a foreclosure sale merely because of harmless errors or irregularities committed in connection with the exercise of the power of sale, or for any slight or frivolous reasons not affecting the substantial rights of the parties. Public policy requires that the ratification of a lawful judicial sale shall be final and conclusive, unless the purchaser was precluded by fraud from making seasonable objection to its ratification. It requires substantial grounds to justify a court in setting aside a judicial sale when lawfully made, for otherwise the public would be loath to bid for property thus offered. So the law is firmly established in Maryland that the final ratification of the sale of property in foreclosure proceedings is *res judicata* as to the validity of such sale, except in case of fraud or illegality, and hence its regularity cannot be attacked in collateral proceedings. *Brown v. Gilmor's Ex'rs,* 8 Md. 322, 326; *Bank of Commerce v. Lanahan,* 45 Md. 396, 410; *Felgner's Admr's v. Slingluff,* 109 Md. 474, 480, 71 A. 978; *Barroll v. Benton,* 121 Md. 174, 88 A. 101; *Bainder v. Sound Building & Loan Ass'n,* 161 Md. 597, 158 A. 2.

However, a court of equity has the power to set aside a foreclosure sale upon an original bill for fraud filed by the mortgagor or any other party interested, where fraud has been discovered after the ratification of the sale, even after the decree has become enrolled. The question presented for our consideration in this case is whether there was evidence of fraud on the part of Israel Bachrach, appellant, sufficient to justify the decree of the chancellor. The law presumes that the mortgagee or assignee has discharged his duty faithfully in the exercise of the power of sale in a mortgage. Conse-

quently the party seeking to have a sale vacated on the ground of fraud has the burden of proof. Where a foreclosure sale has been finally ratified in accordance with established chancery practice, and the sale is impeached on the ground of fraud, the alleged acts of fraud must be clearly established by proof and must be of such a character as to appeal strongly to the conscience of the court, before the sale will be set aside. *Burch v. Scott,* 1 Gill & J. 393, 425; *Shryock v. Morris,* 75 Md. 72, 80, 23 A. 68; *Connaughton v. Bernard,* 84 Md. 577, 590, 36 A. 265; *Gottschalk Co. v. Samuelson,* 128 Md. 541, 97 A. 1003. It is also well settled that a decree assailed on the charge of fraud will not be set aside for any matter which has been actually considered in the case in which the decree was rendered. The acts of fraud for which a court of equity will set aside a decree rendered in a previous case must be extrinsic or collateral to the issue in the previous case. *Marbury v. Stonestreet,* 1 Md. 147, 159; *Maryland Steel Co. v. Marney,* 91 Md. 360, 46 A. 1077; *Payne v. Payne,* 97 Md. 678, 684, 55 A. 368; *United States v. Throckmorton,* 98 U. S. 61, 25 *L. Ed.* 93.

In the case before us there was no allegation that fraud had been committed in the execution of the mortgage. There was no attack on the advertisement of sale. There was no evidence to show that the sale was held surreptitiously to keep bidders away, or that any effort was made to interfere with the bidding. On the contrary, it appears that the sale was properly conducted at the court house in Annapolis. We are mindful of the fact that the farm, containing about 100 acres of sandy land and improved with a two-story farm house, was acquired in 1928 for a total consideration of $4,971.04, and was sold at the foreclosure sale for only $1,700. But the appellant swore that the fair market value of the property in 1941 was not more than about $1,500 or $2,000, although a frame building used for a dining hall and a number of cabins were erected on the land.

However that may be, the law is established that, since the confirmation of a foreclosure sale is the final determination by the court that the mortgaged property was sold at a fair price, the defense of inadequacy of price cannot be raised in subsequent proceedings. *Walton v. Washington County Hospital Ass'n,* 178 Md. 446, 13 A. 2d 627, 128 *A. L. R.* 970. It is true that where there is inadequacy of price at a foreclosure sale, a court of equity will be justified in setting aside the sale on proof of any attempt to stifle bidding or any other unfair conduct at the sale. Inadequacy of price is a strong auxiliary argument in connection with circumstances which cast doubt or suspicion upon the correctness of the sale. But mere inadequacy of price alone is not sufficient to set aside a sale, unless it be so gross and inordinate as to shock the conscience and raise the presumption of fraud, unfairness, or lack of judgment on the part of the mortgagee, or some misconduct or mistake for which the purchaser should be held responsible. *Condon v. Maynard,* 71 Md. 601, 18 A. 957; *Holton Park Co. v. Gary,* 133 Md. 509, 105 A. 751; *Chew v. Baker,* 133 Md. 637, 642, 105 A. 756; *Preske v. Carroll,* 178 Md. 543, 16 A. 2d 291.

The corporation complained that the appellant purchased the mortgages "on the pretext that he was looking out for the interest of his brother's widow." Of course, it was manifestly possible for him to look after the widow's interest as well as his own. In fact, he swore that he purchased both mortgages "at 100 per cent. valuation." In any event, even though there may have been some misstatements, it does not necessarily follow that they constituted fraud. Fraud, as the term is defined in equity, includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed, and which are injurious to another, or by which an undue and unconscientious advantage is taken of another. *St. John the Baptist Greek Catholic Church v. Gengor,* 118 N. J. Eq.

467, 180 A. 379, 393. Where the loss to the complaining party was not caused by any breach of legal or equitable duty, it is *damnum absque injuria.* It is generally accepted that a court will not set aside a foreclosure sale merely because the mortgagee was actuated by malice. The law is clear that the motives of a mortgagee in acquiring and foreclosing a mortgage cannot be set up as a defense to a foreclosure. *Morris v. Tuthill,* 72 N. Y. 575; *Davis v. Flagg,* 35 N. J. Eq. 491; *Weiner v. Cullens,* 97 N. J. Eq. 523, 128 A. 176. In the case where the New England Mutual Life Insurance Company promised to give ample notice to the mortgagor when it desired payment, and the company was afterwards induced by false representations to assign the mortgage to the defendants, who sold the property at foreclosure without giving any notice to the mortgagor, whereby he lost his equity of redemption, the Supreme Judicial Court of Massachusetts held that the mortgagor had no right of action against the defendants for the reason that the acts depriving him of the benefit of the gratuitous promise, even though by falsehood, were not an invasion of any legal right. The court said in that case: "There is a large class of moral rights and duties * * * which the law does not attempt to enforce or protect. The refusal or discontinuance of a favor gives no cause of action. If one trusts to a mere gratuitous promise of favor from another and is disappointed, the law will not protect him from the consequence of his undue confidence, nor encourage carelessness or want of prudence in affairs. * * * The exercise of a right conferred by a valid contract, in the manner provided by its terms, cannot be the ground of an action. The law will not inquire into the motives of the party exercising such right, however unfriendly and selfish. * * * The foreclosure of a mortgage under a power of sale, for example, may be made at such time and under such circumstances as to cause great distress and sacrifice to the mortgagor; but, whatever the motive of the mortgagee, no

remedy ·is afforded for his oppressive conduct, if the re-quirements of the contract have been fulfilled." *Randall v. Hazleton,* 12 Allen, Mass., 412, 415.

It is admitted that Harry Bachrach asserted a claim for $1,000 against the corporation during the period of twelve years until his death, and that he refused to convey his interest in the property until he was paid the sum claimed. We are not called upon to decide whether his claim was just, but undoubtedly he had the right to defend it. Furthermore, irrespective of whether he actually owed the amount of the judgment recovered by Maurice Haimowich, there was no evidence to show that the appellant had any connection with the recovery of the judgment. Nor was there any evidence to prove that the appellant made any effort to acquire the mortgages during the lifetime of his brother. It is clear that if a mortgagee or his assignee complies with the terms of the power of sale in the mortgage, and conducts the foreclosure sale properly, the court will not set aside the sale merely because it brings loss and hardship upon the mortgagor. Strict enforcement of a mortgagee's right may prove to be harsh, but the law generally disregards such a result, because a default by the mortgagor is a violation of the deliberate agreement of the parties, and the remedy, is definitely fixed by statute. It is the mandatory duty of the court to recognize the statutory remedy and enforce the right of the mortgagee. Code, 1939, Art. 66, Secs. 6-14; *Doeller v. Mortgage Guarantee Co.,* 166 Md. 500, 508, 171 A. 856.

Finally, the fact that the appellant and his attorney combined in the scheme to obtain the camp property by purchasing and foreclosing the mortgage does not amount to a conspiracy, A fraudulent conspiracy is the confederation of two or more persons to cheat and defraud, when the design has actually been executed by the confederates with resulting damage to their victim. *Western Maryland Dairy v. Chenowith,* 180 Md. 236, 23 A. 2d 660, 664. As the mortgage in the present case was in

default, the sale of the property to the appellant was lawful. It is expressly provided by the Mortgage Act that no title derived through the foreclosure of mortgaged property shall be impeached, either at law or in equity, on the ground that the property was bought in by the mortgagee or his assignee. Code, 1939, Art. 66, Sec. 15. If the acts of the mortgagee and the assignee were lawful, their confederation does not make their acts unlawful. To establish a conspiracy, it must be shown that there was a confederation of two or more persons for the performance of an unlawful act or a lawful act by unlawful means, and that damage resulted therefrom. *Sumwalt Ice & Coal Co. v. Knickerbocker Ice Co.,* 114 Md. 403, 414, 80 A. 48; *Knoche v. Standard Oil Co. of New Jersey,* 138 Md. 278, 282, 113 A. 754.

Inasmuch as the evidence in this case failed to establish fraud on the part of the appellant in connection with the foreclosure of the mortgage, it is the unavoidable duty of the court to reverse the chancellor's decree.

> *Decree reversed, and amended bill of complaint dismissed, with costs above and below to the appellant.*