SOUTHERN MARYLAND OIL, INC. *v.*
KAMINETZ, Attorney-Assignee ET AL.

[No. 219, September Term, 1970.]

*Decided January 15, 1971.*

444

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SMITH and DIGGES, JJ.

*Thomas F. Mudd,* with whom were *F. DeSales Mudd,*

*W. Aleck Loker* and *Mudd & Mudd* on the brief, for appellant.

*Charles A. Norris,* with whom were *Marvin S. Kaminetz* and *Briscoe & Kenney* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

In this appeal, the appellant, Southern Maryland Oil, Inc. (Southern or Lessee), contends that the Circuit Court for St. Mary's County (Dorsey, C.J.) erred in sustaining a demurrer to Southern's exceptions to the ratification of a sale under a mortgage on certain land of Harry S. Lancaster and Mary A. Lancaster (Mortgagors or Lessors) containing 17,250 square feet and located on Maryland State Road No. 325 in St. Mary's County (the subject property) and in finally ratifying the sale.

Southern's exceptions allege that it is the lessee in possession of the subject property under a Lease and Agreement dated March 23, 1963, between the Lancasters as lessors and Southern as lessee. On the same day that the Lancasters entered into the Lease and Agreement, they had acquired the subject property from Frances L. Hardin, widow (Hardin). The deed consummating the sale was recorded on March 27, 1963. A mortgage securing a loan of $15,080.00 from the Lancasters to The Augusta Building and Loan Association, Inc. (Augusta) was recorded later on the same day. The Lease and Agreement was also recorded on March 27, 1963, but subsequent to the recordation of the mortgage.

When the subject property was conveyed by Hardin to the Lancasters on March 23, 1963, Hardin, the Grantor, owned the adjacent property on which was located an artesian well. As part of the consideration for the purchase price paid Hardin by the Lancasters, Hardin agreed to provide the Lancasters for a period of 25 years from the date of the deed a sufficient and adequate water supply from the artesian well for the improvements "now or to be hereafter constructed" on the subject property.

Ever since March 23, 1963, the Lessee has received the water supply for its filling station operation on the demised premises from the adjacent property. The Lease and Agreement provided, *inter alia,* that the Lessee "shall have the first right of refusal to purchase same [the demised premises] at the price and on the terms and conditions which the lessors have elected to sell," provided the right is exercised as provided in Paragraph 9 of the Lease and Agreement.

By a deed dated February 5, 1968, and duly recorded, the Lancasters conveyed to J. Lawrence Millison, the reversionary interest in the subject property as well as the adjacent parcel of land on which the artesian well is located. This conveyance was subject to the lien of the balance due on the mortgage as well as the leasehold interest of the Lessee, but the sale was in violation of the first refusal option of the Lessee, which has not been waived.

On April 1, 1968, Millison closed the valve on the water line supplying the filling station operation of the Lessee on the subject property. The Lessee made demand on Millison to restore the water supply; and upon his refusal, the Lessee filed a proceeding in equity in the Circuit Court for St. Mary's County, No. A-3095 Equity, against Millison. That court on April 9, 1968, issued a writ of injunction against Millison enjoining and restraining him from directly or indirectly interfering with the free flow of water from the artesian well on his property to supply the leasehold operation of the Lessee on the subject property. This injunction is still in full force and effect. The equity proceeding is still pending, the answer of Millison having been filed on July 9, 1969.

The Lessee has fully complied with all terms and conditions of the Lease and Agreement since Millison's acquisition of the reversionary interest in the subject property and has paid the rent promptly to Millison or his attorney but always under protest and without prejudice to its first refusal option to purchase the reversionary interest.

Millison appears to have paid promptly the monthly installments on the mortgage from April 1968 until a short time before the present foreclosure proceeding was docketed and until a recent appearance in court in Equity No. A-3095 when he was unable to have the injunction vacated and was informed by letter that unless the first refusal option of the Lessee to purchase the subject property could be resolved promptly, a proceeding would be filed to set aside the deed of February 5, 1968, from the Lancasters to Millison.

Millison's attorney by letter of August 20, 1969, received August 23, first informed the Lessee, Southern, of the foreclosure proceeding under the mortgage, the public sale being scheduled for August 26, 1969 [The foreclosure suit was filed on August 6, 1969.].

The Lessee promptly communicated with the attorney-assignee [the appellee, Marvin S. Kaminetz, Attorney-Assignee for the purpose of foreclosure by assignment of Ralph Chesser, to whom the mortgage had been assigned by Augusta on July 9, 1969] and offered to settle the balance due on the mortgage obligation in full, with accrued interest and costs, in consideration of an assignment of the mortgage to the Lessee, but this tender was promptly declined; "that this circumstance, together with the facts herein alleged and documented confirms that J. Lawrence Millison defaulted on the aforesaid mortgage obligation to conspire, encourage or acquiesce in the foreclosure thereof only in an effort to destroy the leasehold interest" of the Lessee.

In the exceptions it was prayed that (1) the sale reported by the attorney-assignee on September 5, 1969 [showing a purchase by Chesser for $35,000, he being the highest bidder] be set aside and not ratified; (2) the foreclosure proceedings be dismissed and the attorney-assignee be directed to withdraw the mortgage and note, the assignment for the purpose of foreclosure be rescinded and cancelled, and the mortgagee be directed to transfer by assignment to the Lessee, Southern, all of his right, title and interest therein upon payment of the prin-

cipal due plus interest and court costs, advertising costs of the foreclosure proceedings and a reasonable fee (but not commissions) of the attorney-assignee to the date of sale and (3) the Lessee have other and further relief.

The report of sale in the foreclosure proceedings was filed on September 5, 1969, and ratified nisi on that day, unless cause be shown on or before October 6, 1969. The purchaser Chesser filed his affidavit on September 29, 1969, "that he purchased the subject property as principal and not as agent for anyone else, that he nor anyone connected with him directly or indirectly discouraged anyone from bidding on said property." The exceptions of the Lessee were filed on October 6, 1969.

Counsel for the purchaser Chesser entered his appearance on October 9, 1969; and on October 15 both the attorney-assignee and the purchaser filed a demurrer to the exceptions on several grounds including that (1) there was no allegation that the lease is a prior lien to the mortgage and in fact the lease is subordinate to the mortgage; (2) the water rights mentioned in the exceptions were previously granted by the Lancasters by the mortgage; (3) there was no allegation of any duty by the attorney-assignee to accept the Lessee's offer to purchase the mortgage; (4) there was no allegation that the purchaser had violated any legal duty to the Lessee or that the sale was conducted unfairly or was improper in any other respects as regards the purchaser; (5) there was no allegation that the Exceptant (the Lessee, Southern) had any interest in the proceeds of sale and, therefore, no standing to file exceptions; and (6) that pursuant to Code (1957), Art. 66, § 20 the Exceptant had no valid claim whatever against the purchaser and the lease is not valid against the purchaser.

After argument and the consideration of legal memoranda filed by counsel for the parties, Chief Judge Dorsey filed a written opinion on March 18, 1970, indicating that inasmuch as the lease was subordinate to the mortgage, the demurrer should be sustained. The sale was

finally ratified on March 25, 1970, and a timely appeal was taken to this Court.

The appellant, Southern, raises four contentions before us, *i.e.*, that (1) it was a party in interest entitled to except to the sale, (2) priority as between the mortgage and the lease is not the controlling issue on the demurrer, (3) the allegations of the exceptions and facts before the lower court at the hearing required an overruling of the demurrer to the exceptions, and (4) the foreclosure sale was irregular and not in conformity with the Maryland Rules of Procedure. We will consider these contentions in the order indicated.

### (1)

The appellees earnestly contended in the lower court and before us that inasmuch as Southern, as lessee, had no interest in the proceeds of the sale, it had no standing to file the exceptions in the case. In our opinion this is too narrow a position. Generally speaking, in order to have status to file exceptions to a sale in a mortgage foreclosure suit, the exceptant, other than a purchaser, must have an interest in the proceeds of sale as mortgagor or as claiming through the mortgagor—see *Righter v. Clayton*, 173 Md. 138, 194 A. 819 (1937)—or the exceptant may have an interest in the property sold which may be adversely affected by the sale, either illegally or improperly made. See *Shaw v. Smith*, 107 Md. 523, 526, 69 A. 116, 118 (1908), Cf. *Bentley v. Beacham*, 91 Md. 677, 47 A. 1024 (1900). See also Ginsberg and Ginsberg, *Mortgages and Other Liens*, p. 334 (1936).

Southern makes no allegation or contention that it has any interest in the proceeds of sale. Its allegations and contentions are that it has an interest in the mortgaged property as tenant under the recorded lease of March 23, 1963, which will be adversely affected if the sale is finally ratified. It appears from the allegations of the exceptions and from the Lease and Agreement itself that Southern did have an interest in the mortgaged property, even though this interest would be destroyed if the sale

were finally ratified in view of the law that the title of the purchaser on final ratification will be that of the mortgagors *prior* to the recordation of the Lease and Agreement as we will point out later in this opinion. If, however, Southern, as lessee, were able to allege and prove a proper ground for preventing the foreclosure of the mortgage because of possible fraud or estoppel, the foreclosure sale would not be finally ratified and Southern's interest in the property would continue. When the purchaser at the foreclosure sale is the mortgagee or his assignee, the Courts will examine the sale closely to determine whether or not it was bona fide and proper. The Courts will set aside such a sale upon "slight evidence of partiality, unfairness or a want of the strictest good faith." *Heighe v. Evans,* 164 Md. 259, 270, 164 A. 671, 676 (1933). In short, there is a distinction between being a proper person to file exceptions at all and the merits of the exceptions themselves when filed; the difference in result is between a dismissal of the exceptions for lack of standing to file them and an overruling of the exceptions as not having been alleged and proved on their merits. In our opinion, the present case falls within the latter class; and Southern was entitled to file the exceptions.

## (2) and (3)

Southern contends that priority as between the mortgage and the lease is not the controlling issue on the demurrer and, further, that the allegation of the exceptions and facts before the lower court at the hearing required an overruling of the demurrer. These two contentions are interrelated and we will consider them together.

Our predecessors in *Northrop v. Beale,* 170 Md. 439, 184 A. 900 (1936) indicated their disapproval of the use of a demurrer to exceptions filed to a report of sale or to an auditor's report. Judge (later Chief Judge) Sloan stated for the Court:

> "A report of sale is not a pleading, nor is an exception to such a report, and we know of no rule by which the legal sufficiency of such an

exception must be raised by a demurrer. The legal sufficiency of an exception to a sale or an auditor's report can be decided without a formal answer; the exception itself raises and submits the question. The failure to file a formal answer cannot result in a judgment or decree by default in favor of the exceptant. If the exception presents a question of fact, an answer may be required, but, whether an answer be filed or not, matters of fact in exceptions to reports of sale or to auditor's reports must be sustained by proof unless expressly admitted. Questions of law, raised by an exception, will be decided by the court after hearing without demurrer. *Miller's Equity Procedure* 642; *Williamson v. Wilson,* 1 Bland, 418, 434, 441; *Post v. Mackall,* 3 Bland, 486, 496; *Dixon v. Dixon,* 1 Md. Ch. 271, 274. The interposition of a demurrer to exceptions to a sale or auditor's report is unnecessary and is not favored."
(170 Md. at 444, 184 A. at 902.)

This Court in *Northrop,* however, proceeded to decide the issues raised by the demurrers in that case as had the trial court. The demurrers in *Northrop* apparently were *general* demurrers, and not demurrers setting forth the grounds of the demurrer as was done in the instant case, as now required by the Maryland Rules. These same grounds could have been raised by an answer to the exceptions or, as suggested in *Northrop,* decided by the trial court even if no answer had been filed. In any event, the lower court considered at the hearing other matters appearing of record not set forth in the exceptions and not disputed by the parties. In our opinion, there has been no prejudice to any of the parties by the method used in presenting the essential questions in regard to the exceptions and we too will decide those issues in the present case.

It is correct, as Southern contends, that the priority

between the mortgage and the lease is not the controlling issue on the demurrer inasmuch as it is well established that it is the *final ratification* of the foreclosure sale and conveyance to the purchaser after payment of the purchase price, which eliminates estates in the mortgaged premises created by the mortgagor subsequent to the mortgage. Code (1968 Repl. Vol.), Art. 66, § 5 (b) provides (as did prior statutory law in substance) that all sales made pursuant either to a power of sale or by an assent to a decree for sale in a mortgage and conveyance to the purchaser after payment of the purchase money "shall have the same effect as if such sale and conveyance were made under decree between the proper parties in relation to the mortgage and in the usual course of said court, and shall operate to pass all the title which the mortgagor had in the mortgaged property at the time of the recording of the mortgage." Art. 66, § 20 provides:

> "All purchasers under such sale shall have the same rights and remedies against the tenants of the mortgagor as the mortgagor had, and the said tenants shall have the same rights and remedies against the purchaser as they would have had against the mortgagor. But no lease made after the mortgage was made shall be valid as against the purchaser."

See *Smith v. Pritchett,* 168 Md. 347, 178 A. 113 (1935) applying a prior and similar statutory provision. See also *Russum v. Wanser,* 53 Md. 92 (1880).

The principal question is whether or not the allegations in the exceptions and the facts before the lower court at the hearing required an overruling of the demurrer and prevented the final ratification of the sale by the lower court.

Fraud and collusion affecting the bona fides of a foreclosure sale may be invoked to challenge that sale for the benefit of those having an interest in the mortgaged property sold. *Righter v. Clayton,* 173 Md. 138, 144, 194 A.

819, 822 (1937). It is provided by Code (1968 Repl. Vol.), Art. 66, § 9, however, that:

> "No title to mortgaged property derived from any sale made and confirmed as aforesaid shall be questioned, impeached or defeated, either at law or in equity, by reason that the mortgaged property was purchased in by the mortgagee or his assignee, or his legal representative, or for his benefit or account."

The mere fact that Chesser, who purchased the mortgaged property at the foreclosure sale, was an assignee of the mortgagee, Augusta, would not invalidate the sale even though, as we have seen, the Courts will scrutinize such a purchase with care and will declare a sale void upon "slight evidence of partiality, unfairness or a want of the strictest good faith." *Heighe v. Evans*, 164 Md. 259, 270, 164 A. 671, 676 (1933), *supra*. It is well established, however, in this State that the motives of a mortgagee or of his assigns in acquiring and in foreclosing a mortgage cannot be set up as a defense to a foreclosure of the mortgage. As Judge Delaplaine, for the Court, aptly stated in *Bachrach v. Washington United Cooperative, Inc.*, 181 Md. 315, 323, 29 A. 2d 822, 826 (1943):

> "It is generally accepted that a court will not set aside a foreclosure sale merely because the mortgagee was actuated by malice. The law is clear that the motives of a mortgagee in acquiring and foreclosing a mortgage cannot be set up as a defense to a foreclosure. *Morris v. Tuthill*, 72 N. Y. 575; *Davis v. Flagg*, 35 N.J.Eq. 491; *Weiner v. Cullens*, 97 N.J.Eq. 523, 128 A. 176."

Southern, therefore, must allege in its exceptions some impropriety in the conduct of the foreclosure sale or fraud by the mortgagor known to the purchaser which would render the sale invalid as was done in the case of *Geisey v. Holberg*, 185 Md. 642, 45 A. 2d 735 (1946).

There are no allegations of any irregularity in the advertising or conducting of the sale or that the purchase price of $35,000 was shockingly inadequate. Nor is there any allegation that the mortgage was not in default.

Southern apparently seeks in its exceptions to allege a fraud or conspiracy that would justify the Chancellor in declining to ratify the sale. In our opinion, its allegations are not sufficient to establish, *prima facie,* either fraud or conspiracy. It alleged that Millison promptly paid the monthly installments on the mortgage until shortly before the foreclosure proceeding was docketed and that the payments were discontinued by Millison after he failed to get the injunction vacated in the equity suit, No. A-3095, and was informed that unless he honored the first refusal option, a proceeding would be filed to set aside the deed from the Lancasters to Millison; that when Southern learned of the foreclosure proceedings by a letter of August 20, 1969, to Southern's attorney from Millison's attorney, Southern offered the attorney-assignee for foreclosure, to settle the balance due on the mortgage with interest and costs provided the attorney-assignee would assign the mortgage to Southern; but this offer was promptly declined; that Millison "defaulted on the aforesaid mortgage obligation to conspire, encourage or acquiesce in the foreclosure thereof only in an attempt to destroy the leasehold interest" of Southern. There was also an allegation that the foreclosure proceeding "in other respects has been irregular and not in conformity with the Maryland Rules of Procedure." There was, however, no specific statement of what the "other respects" were.

It will be observed that there is no allegation of *with whom* Millison allegedly "conspired" and there is no allegation in regard to any intent by him or by anyone else to commit an unlawful act. As we have observed, the motive of Chesser in acquiring the mortgage is not to be considered in ruling upon the exceptions. *Bachrach v. Washington United Cooperative, Inc., supra.* He may well have intended to purchase the mortgage to eliminate

Southern's subsequent lease but the law gives him this right so that purchase with such intent would not constitute an unlawful act. There is no allegation that *he* conspired with Millison or anyone else in regard to the foreclosure of the mortgage. In the letter of August 20, 1969, attached as an exhibit to the exceptions, counsel for Millison indicated that Millison had lost all interest in the property apparently because Southern had refused to pay rent while the filling station was unoccupied. As a consequence of this, Millison had stopped making payments on the mortgage.

As was stated in *Bachrach, supra*:

> "Finally, the fact that the appellant and his attorney combined in the scheme to obtain the camp property by purchasing and foreclosing the mortgage does not amount to a conspiracy. A fraudulent conspiracy is the confederation of two or more persons to cheat and defraud, when the design has actually been executed by the confederates with resulting damage to their victim. *Western Maryland Dairy v. Chenowith,* 180 Md. 236, 23 A. 2d 660, 664. As the mortgage in the present case was in default, the sale of the property to the appellant was lawful. It is expressly provided by the Mortgage Act that no title derived through the foreclosure of mortgaged property shall be impeached, either at law or in equity, on the ground that the property was bought in by the mortgagee or his assignee. Code, 1939, Art. 66, Sec. 15. If the acts of the mortgagee and the assignee were lawful, their confederation does not make their acts unlawful. To establish a conspiracy, it must be shown that there was a confederation of two or more persons for the performance of an unlawful act or a lawful act by unlawful means, and that damage resulted therefrom. *Sumwalt Ice & Coal Co. v. Knickerbocker Ice Co.,* 114 Md.

403, 414, 80 A. 48; *Knoche v. Standard Oil Co. of New Jersey,* 138 Md. 278, 282, 113 A. 754." (181 Md. at 324, 325, 29 A. 2d at 827.)

We might add that in the affidavit of Chesser, the purchaser, filed September 29, 1969 (the report of sale was filed on September 5, 1969), Chesser swore that "he purchased the subject property as principal and not as agent for anyone else, that he nor anyone connected with him directly or indirectly discouraged anyone from bidding on said property." No allegation in the exceptions filed on October 6, 1969, was directed specifically to these statements in the purchaser's affidavit and these statements stand uncontradicted on the record in this case.

The exceptions allege no failure to perform any terms of the mortgage itself which could lead to the loss of the right to foreclose. Cf. *Diliansz v. Klatch,* 247 Md. 315, 231 A. 2d 20 (1967).

### (4)

Southern finally contends that the affidavit of the purchaser was not filed within 30 days after the date of sale and was not in strict compliance with the requirement of Maryland Rule BR6 b 3.

Rule BR6 b 3 provides:

"Unless otherwise ordered by the court for good cause shown before a sale shall be ratified, the purchaser shall file an affidavit setting forth:

"(1) Whether he is acting as agent for anyone; and if so, the name of his principal.

"(2) Whether others are interested as principals; and if so, the names of other principals.

"(3) That he has not directly or indirectly discouraged anyone from bidding for the said property."

The foreclosure sale in this case was apparently held

on August 26, 1969; and the affidavit of the purchaser was filed, as we have stated, on September 29, 1969, more than 30 days after the sale but six days prior to the filing of the exceptions by Southern. Maryland Rule BR6 a requires a report of sale to be filed as soon as practicable after a sale and in no event more than 30 days after the date of the sale. This was done in the present case, the report of sale having been filed on September 5, 1969. There is, however, no requirement that the purchaser's affidavit be filed 30 days after the sale. Such an affidavit must obviously be filed before final ratification, unless otherwise ordered by the court for good cause shown; but other than the requirement to file prior to final ratification, there is no specific time requirement in this portion of Rule BR6. As we have stated, the purchaser's affidavit was filed well before final ratification and prior to the filing of the exceptions by Southern.

In our opinion, the purchaser's affidavit substantially complied with the provisions of Rule BR6 b 3. The affidavit stated that the purchaser bought the property as "principal and not as agent for anyone else." This complies with statement (1) of the Rule. Using the singular word "Principal" indicates that there were no others interested as principals, which is a sufficient compliance with statement (2) in the Rule. The remaining statement that "he nor anyone connected with him directly or indirectly discouraged anyone from bidding on said property" is in compliance with statement (3) in the Rule. In summary, the purchaser's affidavit is in substantial compliance with Rule BR6 b 3 and was timely filed.

> *Order of March 25, 1970, finally ratifying the sale affirmed, the appellant to pay the costs.*