# Fountain, *et al. v.* Pateman.

### *Bill to Redeem from Mortgage Foreclosure.*

(Decided June 30, 1914.   Rehearing denied July 25, 1914.
66 South. 75.)

1. *Mortgages; Redemption from Foreclosure; Parties.*—Where a foreclosure sale under a power in a mortgage is absolutely void and passes no title, the court cannot set it aside and permit the mortgagor or his heirs to redeem unless the legal title is brought before the court by making the mortgagee or his heirs parties to the suit.

2. *Same; Bona Fide Purchaser.*—Under the rule that where equities are equal the legal title must prevail, a foreclosure of a mortgage under power of sale, voidable because the purchaser at the sale was acting for the mortgagee, and because the mortgagee manipulated the sale so as to prevent others from bidding, could not be set aside where the land had subsequently been sold to bona fide purchasers for value without notice of the equities of the heirs of the mortgagor; such purchasers not being chargeable with constructive notice of such facts.

3. *Same; Irregularities; Liability of Mortgagee.*—Where a mortgagee becomes the purchaser after an irregular foreclosure under a power of sale, from one purchasing at such sale, and then sells the land at a profit to an innocent purchaser for value, preventing redemption, the mortgagor or his heirs may hold the mortgagee as a trustee, and recover any profits realized above the mortgage debt with interest and charges.

4. *Same; Question of Legal Title; How Raised.*—In a bill to set aside a foreclosure sale, and to permit the mortgagor or his heirs to redeem, where the foreclosure is voidable, and the holders of the legal title—the mortgagees—are not before the court, the point will be raised by the appellate court on its own motion even though not raised in the court below.

5. *Vendor and Purchaser; Bona Fide; Equities.*—A purchaser of land in good faith who pays an adequate consideration therefor and acquires the legal title, will be protected against prior equities or equitable estates of which he had no notice, actual or constructive.

6. *Same; Notice; Pleading.*—A bill to set aside a foreclosure sale under a power in a mortgage, which sale was voidable but not void, the bill not showing notice of defect on the part of the present owners, but on the contrary showing affirmatively that they purchased in good faith for value and without notice, is so defective that the defects may be taken advantage of by demurrer.

APPEAL from Geneva Chancery Court.

Heard before Hon. T. M. ESPY.

[Fountain, et al. v. Pateman.]

Bill by Josh Pateman by next friend, against W. A. Fountain and others, to redeem from mortgage foreclosure sale. From a decree overruling demurrers to the bill, respondents appeal. Reversed, rendered, and remanded.

C. D. CARMICHAEL and W. O. MULKEY, for appellant.

A. G. SEAY, for appellee.

MAYFIELD, J.—The case attempted to be made by this bill, as last amended, is one by an infant heir of a mortgagor, against a dummy purchaser at a mortgage foreclosure sale and remote and subsequent purchasers of the mortgaged property, to set aside the foreclosure sale, and, incidentally, to allow complainant to redeem the mortgaged premises for himself and the other heirs. The bill is filed 17 years after the foreclosure sale; and the irregularity alleged as ground for the prayer to set aside the sale was that the mortgagee, without authority, purchased at his own sale, and that the sale was so conducted by the mortgagee as to prevent competition in the bidding, and thus to effect a sale at a price grossly inadequate for the property. It is alleged that the person purchasing at the sale really purchased for the mortgagee, thus acting as a mere dummy or conduit through which the title as to the equity of redemtion passed into the mortgaagee. The bill alleges that the mortgagee is dead, that he left no personal representative—that is, administrator or executor—and that the names of his heirs, together with their residences, are unknown to the complainant. The bill shows that the mortgagor left a widow, and other heirs than complainant, but shows affirmatively that their right to have the said sale set

aside and to redeem is long since barred.  The bill as
last amended is not one primarily to redeem and in-
cidentally to remove a cloud from title; but it is pri-
marily to set aside a voidable foreclosure sale, in order
that redemption may be had.  The bill shows affirm-
atively that the equity of redemption was cut off by
a foreclosure sale under the powers of the mortgage;
but it seeks to have the foreclosure sale set aside, with
decree that complainant may redeem.

In the bill as last amended there is no attempt to
show that the foreclosure sale was absolutely void so
that no title passed.  If that were the case—that is,
if the sale was absolutely void—the court cannot now
proceed, because the legal title would not be before
the court; the bill would then show that the legal title
was in the heirs of the mortgagee, who are not parties
to the suit.  The purchaser at the foreclosure sale, and
to whom the mortgagee conveyed title, is made a party
defendant.  The bill alleges that this purchaser con-
veyed back to the mortgagee without consideration,
and that the mortgagee subsequently conveyed to the
Morris Lumber Company, which cut and removed the
merchantable timber from the lands, and sold and con-
veyed rights of way across two 40's to the Central of
Georgia Railway Company, and that such grantee built
a railroad thereon, and, several years thereafter, sold
and conveyed the land to the defendant W. A. Foun-
tain.

There is no attempt in the bill to charge or show
that these remote and subsequent purchasers from the
mortgagee had any notice or knowledge, actual or con-
structive, of the facts alleged which would authorize
the complainant to maintain this bill.  The defendant
O'Neal, who was the purchaser at the foreclosure sale,
and who was a mere conduit to convey the title back

to the mortgagee, is of course chargeable with knowledge of all these facts alleged, to the same extent that the mortgagee was, but this is not so as to these remote and subsequent purchasers from the mortgagee. They were not chargeable with notice or knowledge of the fact that the purchaser was a mere conduit to convey the title into the mortgagee, and was not a bona fide purchaser as his deed from the mortgagee showed him to be. Nor were they chargeable with notice or knowledge of the fact that the mortgagee so manipulated the sale as to prevent others from purchasing. So far as the allegations in this bill show, they were bona fide purchasers for value without notice of any of these equities of complainant which are alleged. So far as the bill shows, none of these remote purchasers knew or were chargeable with notice that the mortgagor was dead and had left minor heirs, or that he was dead when the foreclosure was had. In other words, construing the bill most strongly against the complainant, as we must do, the bill shows that the Morris Lumber Company, the Central of Georgia Railway Company, and W. A. Fountain are bona fide remote and subsequent purchasers from the mortgagee without any notice or knowledge, actual or constructive, of the equities of the complainant to have the foreclosure sale set aside and to be let in to redeem at this late date. The bill in its present shape certainly contains no equity against these bona fide remote and subsequent purchasers from the mortgagee. If the bill were against the mortgagee or the purchaser at the sale (and it is against such purchaser), it would contain equity under the law as often expounded by this court.

The bill is evidently filed under the doctrine as declared in the leading case in this state on the subject

[Fountain, et al. v. Pateman.]

(*Alexander v. Hill,* 88 Ala. 487, 7 South. 238, 16 Am. St. Rep. 55), and in many cases before and after. In all of these cases, however, so far as our investigation goes, the bill was against the mortgagee or purchasers, or parties with notice, actual or constructive, of the equties set up in the complainant's bill.

In bills to redeem, where there has been no foreclosure, subsequent and remote purchasers are of course chargeable with the mortgagor's equitable right to redeem, and with that of his heirs or devisees, if such there be. But in cases like this, where the bill is to set aside and annul a foreclosure sale because of fraud or irregularities such as are alleged in this case, the bill cannot be maintained against such subsequent and remote purchasers, who are without notice or knowledge, actual or constructive, of the facts which give such bills their only equity.

The rule is thus stated by Mr. Jones, in his work on Mortgages: "The purchaser at a mortgage sale is chargeable with notice of defects and irregularities in the sale, and with knowledge whether proper notice was given and whether the sale was had at the proper time and place and in the manner required by the power."

The author says: "The rule is different as regards remote purchasers, who, having no notice in fact of any irregularities, will be protected as innocent purchasers."—Jones on Mortgages, vol. 1913.

The Supreme Court of Massachusetts has announced the same rule. That court in the case of *Dexter v. Shepard,* 117 Mass. 485, said that the objection that the mortgagee had no right to become the purchaser at the foreclosure sale could be of no avail against persons who have subsequently purchased of him in good faith, upon adequate consideration and without notice.

The case of *Burns v. Thayer,* 115 Mass. 89, was a case in which the facts were very similar to the facts in this case, and in which the principles of law involved were exactly in point with those that must prevail here. Therein the bill was filed by the widow and minor child of the mortgagor; and the facts alleged to give the bill equity were that the mortgage did not authorize the mortgagee to purchase at his own sale, and that one Dow, who purchased for the benefit of the mortgagee, by an arrangement between the two, and that the purchaser and the mortgagee subsequently conveyed to third parties, against whom the bill was filed to redeem. The trial court, which was presided over by one of the Justices of the Supreme Court, denied relief, and on appeal, which was tried upon a report made by the trial judge, Justice Ames, the Supreme Court, speaking through Wells, J., said: "This report must be taken to establish the propositions that Dow was a nominal purchaser only, and that the benefit of his purchase and resale to the defendant was secured to Potter, the mortgagee, by some arrangement or understanding between him and Dow. The plaintiff contends that this made void the whole proceeding of the sale under the power, so that no title could pass by the conveyances, except the mortgage title of Potter. This bill is accordingly brought against the defendant alone, as assignee of the mortgage. Such, however, is not the effect of an attempt, by one who is intrusted with the power of sale, to become indirectly a purchaser. The sale, if otherwise regular, is voidable only, at the election of the party whose interests are prejudiced thereby. It is not absolutely void. The title passes. The party injured may avoid and defeat it. But if, before he exercises that right, the estate has been conveyed to another, who has purchased in

[Fountain, et al. v. Pateman.]

good faith, upon adequate consideration and without notice, such purchaser will hold the estate."

The Supreme Court of Illinois has decided in line with the court of Massachusetts and with the text of Mr. Jones; in fact, the Illinois cases are cited by Mr. Jones. It is said by that court that the purchaser at a foreclosure sale is bound to know that the sale is regular and fair, but that the same rule does not apply to remote and subsequent purchasers. As to these latter, if the deeds to them show a compliance with the powers contained in the mortgage, that they are not chargeable with notice of irregularities, such as, that the purchaser was a mere conduit for the mortgagee, that the proper notice was not given, and that the sale was not held at the proper time or place, and that such remote purchasers, in the absence of actual notice or knowledge of the irregularities when they purchased, are protected if they paid an adequate consideration.—*McHany v. Schenk*, 88 Ill. 357; *Gunnell v. Cockerill*, 79 Ill. 79. We know of and can find no authorities to the contrary. To grant relief on a bill like this against remote purchasers who have acted in good faith and without any notice or knowledge of complainant's equities would be to work iniquity under the guise, and in the name of equity.

As before stated, if the bill in this case were against the mortgagee, or the purchaser at the mortgage sale, who now holds the title, and relief could be had against him, then the bill would contain equity, and would be unassailable on demurrer; but such is not the bill. No relief is sought against those who did iniquity or were guilty of the wrongs complained of, but relief is sought against parties who, so far as the bill shows, are wholly innocent of any wrongdoing, and who bought in good faith and paid their money without

any knowledge of these secret equities which the complainant sets up against the mortgagee, who is dead, and against the purchaser, who, it is true, is made a party, but against whom, it is shown, no relief can be had, as he is not alleged to have received any profits from the transactions. This case must be controlled by the maxim that where the equities are equal, the legal title must prevail.

The bill on its face shows that the defendants, the railroad company and Fountain, have the legal title to the land in question, and that they acquired it from an innocent purchaser for value and without notice of complainant's equities. The bill shows that the mortgage authorized the mortgagee to sell at either public or private sale, with or without notice, and to convey title to the purchaser, and that he did so sell and convey title, which has, by a regular chain, passed into these defendants who now own the land, and who had no knowledge or notice of any wrongs on the part of the mortgagee, such as are set up in the bill. The bill in its present shape, therefore, shows no ground for relief against these remote purchasers.

- The effect of the foreclosure, as shown by the amended bill, has been well described and defined by this court as follows: "In the absence of fraud, a foreclosure by a sale under a power conferred by the mortgage as effectually cuts off the equity of redemption, as a decree of strict foreclosure in a court of equity would do."—*Childress v. Monette*, 54 Ala. 317.

"If a mortgagee purchases at his own sale, it is binding on him, and his only right or remedy is to apply in equity, if the mortgagor does not come in to avoid it, to clear his title of doubt and uncertainty, by a confirmation of the sale, or a resale under a decree of the court, as may appear equitable. The mortgagee

acquires the beneficial interest of the mortgagor, subject to be defeated by his election to avoid the sale, expressed in a proper proceeding, and in due time. As to the mortgagor, the sale is not absolutely void, but merely voidable; and it is valid for all the purposes intended until the mortgagor, or some one claiming under him, whose existing rights are injuriously affected thereby, does some act legally sufficient to render it void. So long as there is no disaffirmance, the equity of redemption is as effectually cut off as if a stranger were the purchaser. If no proceedings are taken by the mortgagor, or any one claiming under him, to become reinvested with his equity of redemption, and to restore it to its original status within a reasonable time, no further act is required to give validity to the sale; it has full force and effect from the time when made, and establishes all the rights incident to a valid foreclosure. The equity of redemption being cut off, some proceeding to which the mortgagee is a party is essential to restore it to the state and condition in which it was prior to sale. Until the disaffirmance, the mortgagor has no subsisting estate which he can convey. There remains in him only a naked right or privilege to disaffirm and become reinvested with his beneficial interest for the purpose of redemption."—*McCall v. Mash,* 89 Ala. 487, 7 South. 771, 18 Am. St. Rep. 145, 146,147.

So here, in this case, there was left in complainant and in other heirs of the deceased mortgagor only a naked right or privilege to disaffirm, and become reinvested with the beneficial interest for the purposes of redemption. If, however, this privilege is not exercised until the legal title has passed into innocent purchasers from the mortgagee, after the irregular foreclosure, then the right to set aside the sale,

with consequent right to redeem, is gone; and the mortgagor, or his heirs, are then remitted to other actions and remedies for redress. That is, if the mortgagee, after irregular foreclosure, sells the land for a profit to an innocent purchaser, so as to prevent a redemption, the mortgagor or his heirs may hold the mortgagee as a trustee, and recover whatever profits he realized over and above the mortgage debt, with interest and charges. It could by no means be tolerated to allow a sale like the one in question to be set aside 17 or 20 years after the sale, when all the parties to the mortgage and sale are dead, and after the title has been sold and bought and passed into and through various parties who had no knowledge or notice of any equities which would render the sale void or voidable.

If the bill in this case can be supported it must be supported on the theory that the defendants, Fountain and Central of Georgia Railway Company, have acquired the legal title, which is before the court; and unless they have acquired such title it is in the heirs of the mortgagee, who are not before the court, and without whom neither the trial court nor this court would proceed. In a suit like this, if it appears that the legal title to the land is not before the court, the point will be taken ex mero motu in this court, even though not raised in the court below.—6 Mayf. Dig. 695; *Russell v. Bell*, 160 Ala. 480, 49 South. 314.

The complainant in this case relies, must rely, upon a mere equitable right to defeat and divest the legal title. The bill shows on its face that those who hold the legal title have equities equal to, if not superior to, his; that is, the bill shows that they acquired the legal title without notice, actual or constrictive, of any facts which would charge them with knowledge of com-

plainant's equity. The facts which give rise to complainant's equity rest in parol, and the holders of the legal title are not shown to be chargeable with notice or knowledge of such facts, and hence no right is shown, to the enforcement of complainant's equities against them.

We take it that the following propositions of law are well satisfied both in England and in America, and, so far as we know, are settled without conflict.

A purchaser in good faith of land, who pays an adequate consideration and acquires the legal title, is thereby protected against any prior equitable estate of which he had no notice, either actual or constructive. The Supreme Court of the United States, in a case something like this, in which the complainant was seeking to enforce an equitable title which, like this, was a secret trust, said : "The case of appellant is therefore an attempt to set up a secret trust as against bona fide purchasers for value without notice. But nothing is clearer than that a purchaser for a valuable consideration, without notice of a prior equitable right, obtaining the legal estate at the time of his purchase, is entitled to priority in equity as well as at law, according to the well-known maxim that when equities are equal the law shall prevail.—*Williams v. Jackson,* 107 U. S. 478, 2 Sup. Ct. 814, 27 L. Ed. 529 ;" *Townsend v. Little,* 109 U. S. 504, 511, 512, 3 Sup. Ct. 357, 27 L. Ed. 1012.

The rule is that one who purchases and pays his money without notice of a prior equitable estate or claim affecting either the legal or the equitable estate, and thereby obtains the legal title, is protected against any prior equity or equitable estate. The rule is of course different if he does not acquire the legal title; in such case, it is that, both parties having an

[Town of Eutaw v. Coleman.]

equity only, the one prior in time will prevail, but if the one having acquired the subsequent equity in good faith also acquired the legal title, then it prevails—*Vattier v. Hinde,* 7 Pet. 252, 8 L. Ed. 675.

The English and American authorities may be found collected on this subject in 1 Am. & Eng. Rul. Cas. 702-847.

These defects, appearing as they did on the face of the bill as last amended, could be, and were, properly taken advantage of by demurrer.—Story's Eq. Pl. (10th Ed.) § 603.

The bill must be amended so as to allege notice on the part of the purchasers of complainant's equity, before they can be charged with notice or the equity enforced against them.

Reversed, rendered, and remanded.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.