R. B. B. CHEW, JR., T. HOWARD DUCKETT & C. B. ZANTZINGER, Trustees-Purchasers,

*vs.*

H. P. BAKER, Administrator, Exceptant.

*Mortgages: subsequent judgments; do not bind interest of mortgagor; inadequacy of price; collusion of purchaser; creditors' rights.*

Judgments against a mortgagor subsequent to the mortgage do not bind his interest, and under a foreclosure sale of the mortgage his interest passes to the purchaser clear of the judgment claim.                                        p. 640

Where there is a great inadequacy of price at a sale in equity, circumstances of unfairness and the conduct of the party benefited by the sale will be sufficient to justify the court in settting it aside.                                          p. 642

Where a purchaser keeps bidders away and suppresses competitive bids, it is justification for setting aside a sale in case of an inadequate price.                                 p. 643

A creditor whose interests are prejudiced by a mortgage sale of the debtor's mortgaged property has a right to file exceptions to the sale for inadequacy of price.                     p. 643

*Decided January 16th, 1919.*

Appeal from the Circuit Court for Prince George's County. (In Equity.)   (Beall, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*S. Marvin Peach* and *T. Howard Duckett,* for the appellants.

*Clarence M. Roberts,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appeal in this case is from an order of the lower Court sustaining exceptions to a sale made by John B. Gray, assignee of a mortgage, and setting aside the sale. The mortgage was executed by the late Richard B. B. Chew, trustee, and also in his individual capacity, and by Louisa D. Chew, his wife, to Samuel K. George. It conveyed six hundred and thirty acres of land and improvements located in Prince George's County, Maryland, and was given to secure a loan of ten thousand dollars loaned by the mortgagee to the mortgagors and other persons mentioned in the mortgage. On the third of January, 1918, there was due upon the mortgage, * * * which was long since overdue, * * * the sum of seven thousand seven hundred and twenty-eight dollars and thirty-five cents, and on that day the mortgage was assigned to Mr. Gray, who advertised the property for sale under the power contained in the mortgage, and sold it on the premises on March 18th, 1918, for ten thousand nine hundred dollars. In the advertisement the property was said to be "improved by a fine, modern dwelling house, several tenant houses, outhouses, tobacco barns, stables, corn houses, granaries, ice house, and all other necessary improvements which are to be found on an up-to-date farm, and affords an excellent opportunity for any one who desires an improved farm or home." The property is located near Upper Marlboro, and is within a short distance of two railroads, and the land is well improved and well adapted for farming purposes. It may well be described as a handsome and desirable country estate.

The testimony is practically undisputed, and the question we are called upon to decide is a narrow one, and one which,

we think, under the facts appearing in the record, presents little difficulty. The learned judge in the Court below in his opinion said: "From a careful perusal of all the oral testimony and documentary evidence in the case, it must be admitted that some methods have been followed which are by no means commendable, and ought not to be sanctioned by a Court of Equity." We will advert to these methods later.

Richard B. B. Chew, Senior, died leaving surviving him four children his only heirs at law: viz, Richard B. B. Chew, Anna M. B. Chew, Sarah C. Zautzinger and Phil W. Chew, who became tenants in common of the mortgaged property. Phil W. Chew died, and at the time of his death owned a one-fourth undivided interest in this property, and his personal estate was insufficient to pay his debts. An inventory of his personal estate appears in the record whereby it is shown that it was valued at five hundred and forty-eight dollars and seventy-five cents, and a list of unsecured creditors, showing an indebtedness of six thousand five hundred and seventy-eight dollars and seventy-eight cents, also appears in the record. In addition to this, a number of persons had recovered judgments against him. The First National Bank of Southern Maryland held several judgments against the mortgagors and also held several judgments and unpaid notes against Phil W. Chew.

The mortgage had been assigned on the 16th day of June, 1917, by Samuel K. George to Clarence M. Roberts for the purpose of foreclosure, and he advertised the property for sale. Proceedings were instituted in the Circuit Court for Prince George's County to restrain the sale until the exact amount due on the mortgage was ascertained.

When the amount found due on the mortgage was ascertained under these proceedings, the mortgage was assigned by Mr. Roberts to Mr. Gray under the following circumstances:

The surviving heirs of the mortgagors determined to buy the property, and one of them—Richard B. B. Chew,—on

behalf of himself and the other heirs applied to the Eastern Shore Trust Company for a mortgage loan of ten thousand dollars on the property to be executed by the Chew heirs, or their representatives. A committee of the Trust Company was appointed to examine the property, and reported that it was sufficient security for ten thousand dollars. The Eastern Shore Trust Company then paid Mr. George the amount due on the mortgage and it was assigned to John B. Gray, its attorney, who proceeded to foreclose the mortgage "under the agreement made prior to the assignment of the mortgage whereby foreclosure was to be made, and a new mortgage given." The judgments against Phil W. Chew were subsequent to the mortgage, and under the sale his undivided one-fourth interest in the property would pass unencumbered to the purchasers, and his creditors would be obliged to look to the proceeds of the sale for payment of their claims.

On the 6th of March, 1918, the surviving heirs of Richard B. B. Chew, Sr., entered into an agreement in which it was recited that: "It is deemed necessary to foreclose the eight thousand ($8,000) dollar mortgage now on the property, the unpaid balance of which has been assigned by Samuel K. George of Baltimore, Maryland, to the said Eastern Shore Trust Company to cure certain defects in the title of said property." The "certain defects" here referred to meant and could only mean the one-fourth interest of Phil W. Chew which was liable for the debts of his creditors. It was further agreed "by and between the said above mentioned heirs at law of the late Richard B. B. Chew, that the property is to be bid in at its lowest cash price it can be bought for on the day of sale by three trustees to be hereinafter named, for the said heirs, which said trustees are to hold the title to said property, to execute such mortgage or deeds of trust on said property, as they may be, in writing, by us directed to execute, and to execute such fee simple deed or deeds as we may in writing direct them to execute conveying the equitable title of said property." Attached to this agreement is the following: "We, the undersigned, having first read the within in-

strument, hereby individually and collectively agree to act as such trustees for the purpose of carrying out the wishes and desires of the heirs, as set out in this instrument. Witness:—T. Howard Duckett, Otway B. Zantzinger, Richard B. B. Chew."

The First National Bank of Southern Maryland, holding the claims to which we have referred, had determined to bid upon the property at the mortgage sale, but three days prior to the sale the living Chew heirs entered into agreements with the bank whereby its claims were protected, and after these agreements the bank notified its representative that it did not want him to bid at the sale.

Samuel M. Frazier, of Washington, a thoroughly responsible man and a stranger to every one present, attended the sale, for the purpose of buying the property, and was prepared and intended to bid eighteen thousand dollars for the property as an investment. He was able to comply with the terms of sale. He was approached by one of the purchasers * * * called on the record "Trustees-Purchasers," because they were acting under the agreement above quoted, * * * who had quite a full talk with him about the property and about the desire of the Chew heirs to acquire it at the sale. Mr. Frazier's testimony as to what was said to him in this conversation is uncontradicted, and the result of the conversation was that he did not bid on the property. It is perfectly apparent that the object which this one of the purchasers had in view in seeking out Mr. Frazier and in talking to him was to induce him not to bid, and that he succeeded in accomplishing that object. The sale proceeded, and the property was bought by the Trustees-Purchasers for ten thousand nine hundred dollars, and the sale was reported to the Court by Mr. Gray. Laura E. Baker, now deceased, had probated and filed in the Orphans' Court for Prince George's County an unsecured claim of fifteen hundred and four dollars and sixty cents, against Phil W. Chew, and her administrator filed exceptions to the ratification of the sale. In the view we take of the case it is not necessary to discuss all the

grounds of the exceptions, although it is proper to say that there is nothing in the record to justify any charge of fraud or bad faith on the part of any one connected with the sale.

We are satisfied that the property was sold for an inadequate price,—for a sum very much below its market value. This is established by the testimony of a number of well qualified witnesses, by the character of the property itself, and by the fact that the Eastern Shore Trust Company regarded the property as sufficient security for a loan of ten thousand dollars. The question for decision is: Does this inadequacy of price, in connection with the facts which we have stated, furnish sufficient grounds under the law for setting aside the sale? It is held in Maryland that where there is great inadequacy of price, circumstances of unfairness in the conduct of the party benefited by the sale will be sufficient to justify the Court in setting aside the sale. It was said in *Johnson* v. *Dorsey,* 7 Gill, 269, that "it is certainly true that inadequacy of price is to be regarded as a strong auxiliary argument, in combination with circumstances calculated to cast a doubt or suspicion upon the correctness of the sale." In *State* v. *Brookes,* 2 Bland, 37, where a person was prevented from bidding, and the land was sold for considerably less than might have otherwise been obtained, the sale was set aside. It was held that where "it is clearly established by the depositions, that the sale was affected by suggestions made at the time of the sale, that thereby a person was prevented from bidding, and the land hath been sold for a considerably less price than otherwise it might have commanded. It hath always been a rule with the Chancellor to impress the public with an idea, that no device or contrivance used at a sale, which requires his ratification, shall be of any avail. It is essential to the administration of justice in this Court, that this rule be inviolably observed. Where property appears to have been sold under its value, the slightest circumstance of fraud, combination or management, ought to be deemed sufficient, on the application of a party interested, to set aside the sale. As those things are of a nature to elude detection,

where little is proved, a great deal may fairly be presumed. In the present case, indeed, there does not appear to have been any fraud or combination; but if a sale, under such circumstances, should be ratified, the encouragement which the precedent might afford, would probably operate not only against the interest of the parties concerned in sales, but against substantial justice and the reputation of this tribunal." In *Wagner et al.* v. *Phillips et al.*, 51 Mo. 117, where it was shown that the purchaser kept bidders away from the sale and suppressed competitive bidding, and the property sold for an inadequate price, the sale was set aside upon these grounds. These two cases, in which the facts are very analagous to those contained in this record, are based upon principles of fairness and justice, and sustain the decree of the lower Court.

We do not think there is any real question as to the right of the exceptant to object to the sale. The personal estate of Phil W. Chew is insufficient to pay his creditors, and his interest in the property sold is liable for their payment. In *Warfield* v. *Ross,* 38 Md. 85, and in *Griffith* v. *Hammond,* 45 Md. 85, it was held that persons whose interests in mortgaged property would not be affected by a sale under the power contained in the mortgage could not file exceptions. Here, however, the creditors of Phil W. Chew are interested in the proceeds of the sale of his interest and their interests would be directly affected by the sale, and we know of no provision of law which forbids the Court, upon their application, to protect their interests. The case of *McNiece* v. *Eliason,* 78 Md. 168, relied on by the appellants, merely decides that a general creditor has no right to redeem a mortgage and be subrogated to the rights of the mortgagee. That case cannot be regarded as supporting the appellants' contention, as its object and facts are different from those presented by this record.

It follows from what we have said, that the order appealed from must be affirmed.

*Order affirmed, with costs.*