WALKER *v.* WILLIAMS ET AL., TRUSTEES

[No. 54, September Term, 1958.]

*Decided November 24, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND and HORNEY, JJ., and HENRY, J., Chief Judge of the First Judicial Circuit, specially assigned.

Submitted on brief by *Sarah A. Walker, pro se,* for the appellant.

*John P. Moore,* with whom were *Moore & Linowes* on the brief, for the appellees.

HENRY, J., by special assignment, delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Montgomery County, sitting as a Court of Equity, dated March 14, 1958, finally ratifying a sale made and reported in a mortgage foreclosure proceeding to which exceptions had been filed on December 20, 1957, by the appellant herein, Mrs. Sarah A. Walker.

The appellee filed a motion to dismiss the appeal on the ground that the record extract is deficient in that it did not include either the oral opinion of the Circuit Court or any of the testimony taken in a hearing in open court on the petition excepting to the final ratification of the sale and was insufficient to enable this Court to determine the issue presented on this appeal. Since this opinion and this testimony have been supplied by the appellee in an appendix to his brief we will not rule on the motion.

On February 3d, 1953, the appellant, now or formerly engaged in the real estate business in Maryland and Virginia, together with her husband, now deceased, though the date of his death is not supplied and it is immaterial for the purposes of this case, executed a deed of trust in the nature of a mort-

gage to secure the payment of a promissory note payable to one Walter Miller, Treasurer, Guardian Building & Loan Association, Inc., or his successors in office, for the sum of Fourteen Thousand Five Hundred Dollars ($14,500.00).

The deed of trust or mortgage granted and conveyed the property known as No. 7441 Baltimore Avenue, Takoma Park, Maryland, being the house and lot with which we are here concerned, unto three trustees named therein and provided that the debt, principal and interest should be repaid "in monthly instalments of One Hundred and Five and 70/100 ($105.70) Dollars commencing on the 1st day of March, 1953, and continuing on the 1st day of each and every month thereafter with the entire remaining unpaid balance of principal and interest being due and payable in full on the 1st day of February 1970."

It was also agreed and understood that in addition to the aforesaid monthly instalments the mortgagors should pay in monthly instalments 1/12 of the annual state, county and town taxes and 1/36 of the 3 year fire and extended coverage insurance premium. This made the total of the monthly payments about $136.00.

Among the provisions of the deed of trust were the following: "And Upon This Further Trust, upon any default or failure being made in the payment of said promissory note or of any instalment of principal or interest thereon, when and as the same shall become due and payable, or upon default being made in the payment, after demand therefor, of any money advanced as herein provided for, or of any proper cost, charges, commissions, or expenses in and about the same, then and at anytime thereafter the said parties of the second part their heirs or assigns or the trustees acting in the execution of this trust, shall have the power and it shall be their or his duty thereafter to sell, and in case of any default of any purchaser to resell the said described land and premises at public auction, upon such terms and conditions, in such parcels, at such time and place, and after such previous public advertisement as the parties of the second part their heirs or assigns or the trustees acting in the execution of this trust shall deem advantageous and proper * * *."

Under the above provisions the property conveyed in the mortgage was advertised for sale commencing on November 7, 1957, and was sold on December 2, 1957, on the premises to Guardian Federal Savings and Loan Association, Inc., successors to Guardian Building and Loan Association, Inc., for the sum of $12,500. The report of sale, filed on December 30, 1957, disclosed the balance still due on the deed of trust to be $12,886.92.

Prior to the filing of the Report of Sale, that is on December 20, 1957, the appellant filed the petition hereinbefore mentioned, asking the Circuit Court to withhold approval of any sale made under the aforesaid deed of trust and raising the two questions which were decided by that court, that the trustees had the right to make the sale and that the price which the property brought should not cause the court to withhold its approval of the sale.

There was considerable testimony taken on the part of the appellant as well as on the part of the appellee and without going over it in detail we think it sufficient to say that the conclusion arrived at by the Circuit Court that there was default in making the payments required by the terms of the mortgage, that is that the appellant was "dilatory" was amply justified by the evidence. This being so, the power of sale, that is the right to foreclose, is provided for in the deed of trust, and is a voluntary agreement authorized by statute on the part of the appellant and requires no action on the part of a court to confer such right. Art. 66, sec. 5 a, 1957 Edition of the Annotated Code of Maryland.

The other point raised in this appeal is the price for which the property was sold, alleged by the appellant to be so inadequate as to require that the sale be set aside for that reason.

The report of sale showed the sale price to have been the sum of $12,500. The appellant testified to several different valuations. She first testified that she had offered it for sale for $21,950, and that the people who lived in the property had an option to purchase it at that figure. She then testified that because she was being caused so much trouble by the mortgagee, she advertised the property for sale for $19,950, and that this was the lowest price at which she had

ever offered it. However Plaintiffs' Exhibit No. 1, a letter from Mrs. Walker to one Carl Tamorria, dated November 7, 1957, directed him to offer the property for sale for $17,950.

"Mr. Tamorria testified in the proceedings that he was employed as a property manager in the office of Viers Brothers, rental agents; that he managed the property of Mrs. Walker involved herein for two years; that he inspected the property and that it had not been redecorated or reconditioned and repaired for sometime; but it was not in as bad condition as he had expected; it was not in what you would call good condition, but was fair." He felt the top price to list the property for sale was $17,500.

The question of inadequacy of price as a reason for declining to ratify a sale and to set it aside is well settled in Maryland. In the case of *Bachrach v. Washington United Cooperative,* 181 Md. 315, 322, 29 A. 2d 822, this Court said: "It is true that where there is inadequacy of price at a foreclosure sale, a court of equity will be justified in setting aside the sale on proof of any attempt to stifle bidding or any other unfair conduct at the sale. Inadequacy of price is a strong auxiliary argument in connection with circumstances which cast doubt or suspicion upon the correctness of the sale. But mere inadequacy of price alone is not sufficient to set aside a sale, unless it be so gross and inordinate as to shock the conscience and raise the presumption of fraud, unfairness, or lack of judgment on the part of the mortgagee, or some misconduct or mistake for which the purchaser should be held responsible."

We find no testimony in this case indicating such a gross inadequacy of price as to shock the conscience of the court. There is no allegation or evidence that the sale was not sufficiently advertised or that there was any act on the part of the trustees, or of the mortgagee or of anyone connected with them or either of them, to discourage bidding or in anyway to prevent a free and impartial sale. There is evidence, however, found by the Circuit Court, of conduct on the part of the appellant which kept at least one bidder from the sale when she told her agent or former agent, Tamorria, who had a prospective purchaser as a customer, that there would

be no sale, thus causing him not to attend. There is also evidence that she kept the house locked and declined or refused to permit any one to inspect it. It may be that her actions did prevent the property from bringing a higher price, but there is not the slightest evidence that any action on the part of the appellees contributed thereto. The appellant can hardly take advantage of her own conduct as ground for setting the sale aside. We think the action of the Circuit Court in finally ratifying the sale was correct.

*Order affirmed, with costs.*