694 A.2d 93

Evelyn L. **PIZZA**

v.

Stefanie J. **WALTER.**

**No. 48, Sept. Term, 1996.**

Court of Appeals of Maryland.

May 14, 1997.

Reconsideration Denied June 26, 1997.

Charles J. Muskin, Glen Burnie, for Petitioner.

C. Edward Hartman, III (Hartman and Parrott, on brief), Annapolis, for Respondent.

Argued before BELL, C.J., and ELDRIDGE,* RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RAKER, Judge.

We granted certiorari to consider whether the Circuit Court for Anne Arundel County erred in overruling exceptions to a mortgage foreclosure sale and ratifying the sale.

Respondent, Citizen's Bank of Maryland (the Bank), sold for $325,000 certain property located at 8203 Ventnor Road, Pasadena, Maryland under the power of sale conferred by a Deed of Trust. The Bank held a first Deed of Trust on the property. The house was owned by Robert A. Diemer. Evelyn Pizza, Diemer's sister, held a second Deed of Trust on the property and Samson Financial Group held a third Deed of Trust on the same property. When Diemer defaulted on his payments to the Bank, the Bank filed a Deed of Appointment prepared by its counsel, C. Edward Hartman, III, appointing Stefanie J. Walter as Substitute Trustee (the Trustee). Under the power of sale, the Trustee filed a foreclosure action in

---

* Judge Eldridge participated in the oral argument, but did not participate in the decision and the adoption of the opinion.

the Circuit Court for Anne Arundel County to sell the property.

The Bank served notice of the foreclosure proceedings to Diemer, and to Pizza and Samson Financial as holders of the second and third Deeds of Trust. The circuit court granted Pizza and Samson leave to intervene. The sale was conducted on March 3, 1995, at the courthouse door. The proceeds of the sale satisfied the indebtedness to the Bank, but did not produce sufficient funds to satisfy the indebtedness to Pizza or Samson. Aggrieved by the manner in which the sale was conducted, Pizza filed exceptions to the ratification of the sale.

The circuit court held a trial on Pizza's exceptions. In an order dated June 21, 1995, the court denied the exceptions and ratified the sale. On June 22, 1995, pursuant to Maryland Rule W 74, the Trustee filed a motion to substitute C. Edward Hartman, III, and Cynthia Hartman as purchasers, and the court signed the order on that date.[1] On June 26, 1995, the Trustee executed a Deed conveying the property to C. Edward Hartman, III and Cynthia S. Hartman, for $335,000; settlement was held the same day.

Pizza appealed to the Court of Special Appeals on June 27, 1995. On the same day, she moved to set supersedeas bond and to stay enforcement. The Trustee opposed Pizza's motion, contending that the motion to set supersedeas bond as well as Pizza's appeal were moot because the property had been resold to a bona fide purchaser, namely Hartman. The circuit court agreed with the Trustee and ruled that the motion for stay of enforcement pending appeal was moot in light of the transfer of the subject property before Pizza had filed a bond.

Before the Court of Special Appeals, Pizza again moved to set supersedeas bond and to stay enforcement. By an order

---

1. The Motion to Substitute Purchaser contained a certificate of service to Charles J. Muskin, Pizza's attorney, dated June 22, 1995. The Order granting the motion was signed on the same date. The Order was docketed in the circuit court on June 28, 1996, two days after Hartman settled on the property.

dated August 22, 1995, the Court of Special Appeals enjoined Hartman from alienating or encumbering the property and referred the case to the Circuit Court for Anne Arundel County to set a bond. On remand, the parties agreed on a nominal bond of $1000.

The Court of Special Appeals affirmed the judgment of the circuit court in an unreported opinion. The court concluded:

The trial court recognized that when the purchaser at the foreclosure sale is the mortgagee or his assignee the court will examine the sale closely to determine whether it was bona fide and proper. A sale will be set aside, furthermore, upon "slight evidence of partiality, unfairness or a want of the strictest good faith." The trial court concluded, however, that Pizza's assertions did not establish unfairness or lack of good faith in the conduct of the sale that would render the sale void. We conclude that the court's decision . . . should be affirmed. (citation omitted).

We granted Pizza's petition for a writ of certiorari.

Robert Diemer owned a large, single family dwelling on a waterfront lot comprising approximately 3.6 acres with 600 feet of water frontage. The house measured over 4,300 square feet and included four bedrooms, 3½ baths, a fireplace, an in-ground pool, a dock, a three car garage, a tractor garage, marble tile, hardwood floors, an alarm system, two central air conditioning units, and an oil fired hot water furnace with three zones.

Hartman prepared a Deed of Appointment on behalf of the Bank, appointing Stefanie J. Walter, a paralegal in his law office, as Substitute Trustee. The Trustee contacted Robert Campbell, an auctioneer and professional appraiser, to conduct the sale of the property. Campbell appraised the property as having a fair market value of $625,000 and provided the Trustee with a twenty-seven page appraisal report.[2] The

---

2. Mr. Diemer testified at the trial that in his opinion, the replacement value of the property at the time of the trial would be $1,000,000. The

home and improvements were valued at $297,650.00 and accounted for approximately fifty percent of the property value; the land was valued at $296,860.00 and accounted for the other fifty percent. With Hartman's aid, the Trustee prepared the foreclosure action and legal advertisement.

The legal advertisement was placed in *The Annapolis Capital* by the Trustee and ran once a week for three successive weeks prior to the sale.[3] The property improvements were described in the advertisement as follows:

The property is improved by a waterfront single family dwelling consisting of 4 bedrooms, 3½ baths, fireplace, pool, dock, and 3 car garage.

The advertisement also included the address of the property and described it in the following manner:

Lot Numbered One (1) in the Diemer/Pizza Minor Subdivision, as per plat thereof recorded among the Land Records of Anne Arundel County, at Plat Book 4019, at Plat 623.

Before the advertisement was placed in *The Annapolis Capital,* the auctioneer recommended to Hartman that he purchase additional advertising. Hartman refused, but passed the suggestion on to Pizza. After the advertisement was placed in *The Annapolis Capital,* the auctioneer received only a few telephone inquiries regarding the property. At Pizza's request, the auctioneer placed supplemental advertisements that ran on one day, the Sunday before the sale, in The *Baltimore Sun* and The *Washington Times.* The supplemen-

---

record also reflects that Samson Financial, the third lienholder, appraised the property at $700,000.

3. The Court of Appeals, by Order dated June 5, 1996, effective January 1, 1997, rescinded Subtitle W of Chapter 1100 of the Maryland Rules of Procedure and substituted Title 14. Maryland Rule W 74 required the person authorized to make the sale, in this case the Trustee, to publish notice of the time, place and terms of the sale at least once a week for three successive weeks prior to the sale in a newspaper of substantial circulation in the county where the property is located. The provisions concerning the time, place, and frequency of published notices are identical in Rule 14–206(b).

tal advertisement ran under the heading of "Waterfront Real Estate" and read as follows:

The subject property containing approximately 3.668 acres +/− contains a large one story rambler with basement with approximately 4,388 s.f. on the first floor. The residence contains a living room, dining room, kitchen, pantry, den, master suite with private bath, 3 additional bedrooms, 1½ additional baths on the first floor and recreation room, bedroom, laundry/utility room, full bath, built-in 3–car garage w/tractor garage on the basement level. The residence is heated by an oil fired hot water furnace with 3–zones, cooled by two central air conditioning units, and has many amenities such as fireplace, marble tile and hardwood floors, alarm system, and many executive home extras. The property has a large concrete patio, in-ground swimming pool, storage shed, and a boat dock/pier.

Campbell testified at trial that during the week of the sale following the supplemental advertisements he was overwhelmed with phone inquiries, and there were more inquiries than he had ever received for any other property in the twenty-five years that he had been an auctioneer.

The sale of the property was conducted at the courthouse door with approximately seven people present. Pizza and her attorney were present, along with a lending officer from the Bank, Hartman, the Trustee, a representative of Samson Financial, and one prospective bidder. The auctioneer was unable to secure any bids for the property, and Hartman entered the bid of $325,000, the approximate amount of the indebtedness to the Bank. Hartman's bid was the only bid; the lending officer from the Bank who was present at the sale did not bid.

The Contract of Sale filed by the Trustee in the circuit court on March 6, 1995, was signed as follows:

Citizens Bank of Maryland

C.E. Hartman III

by C. Edward Hartman III

authorized agent

In the Affidavit of Purchaser, also dated March 6, 1995, Hartman certified:

1. I am the purchaser or agent of the purchaser of the property known [as] 8203 Ventnor Road, Pasadena, Anne Arundel County, Maryland.

2. The property was purchased on March 3, 1995, for the sum of $325,000.00.

3. I am acting for myself, or, if not acting for myself, the name of my principal is Citizens Bank of Maryland.[4]

The Affidavit of Purchaser is signed "C.E. Hartman III."

Pizza filed exceptions to the foreclosure sale, requesting that the sale be set aside on the following grounds: first, the price for which the land was sold was inadequate; second, the property was not sufficiently advertised; and third, the Trustee was not an independent officer of the court and had loyalties adverse to the title owner of the property and to the exceptant. Pizza also noted in her exceptions that the "attorney representing the Bank is the actual purchaser of the property and this fact is not revealed to the Court."

At the trial on the exceptions, Pizza established the fair market value of the Diemer property by presenting the testimony of Robert Campbell, the auctioneer and appraiser whom the Trustee retained to handle the sale. Campbell testified that he appraised the property as having a fair market value of $625,000 as of October, 1994. Campbell estimated that a decline in the real estate market since that time may have decreased the fair market value by approximately $15,000 to $25,000.

Pizza presented expert testimony from Daniel Billig, of Billig Appraisal Corporation. Billig testified that an adver-

---

4. We note that Hartman's affidavit of purchaser does not fully comply with Rule BR 6, the rule in effect at the time. Rule BR 6.b.3(1), Affidavit by Purchaser, required that the purchaser file an affidavit setting forth "whether he is acting as agent for anyone; and if so, the name of his principal." Hartman's affidavit is ambiguous, and does not specify whether he is acting in his own capacity or as an agent for the Bank.

tisement that includes the important features of the property, such as the lot size, water frontage and house amenities "[is] the difference between having a successful auction and an auction that results in a lender buy-back of the property." She also presented testimony from Trudy Stevens, a real estate agent of some twelve years in Anne Arundel County, who lives near the Diemer property. Stevens testified that *The Annapolis Capital* description of the property more closely described the typical Pasadena home—a 50-foot wide lot with a little cape cod or cottage-type home. She further testified that the fact that the Diemer house was on 3.6 acres was extremely important to potential purchasers. She said that "the amount of property is very important to waterfront buyers. Waterfront has become so expensive and land is at such a premium, ... it's very difficult to get large parcels of land, first of all, and especially large parcels of waterfront land and people coming to look for waterfront are often shocked at the little amount of property that they get for their dollar." She expressed the opinion that the legal advertisement was insufficient to inform the public that this home was not typical for the area, in that this property included substantially more land, more waterfront, and a larger, more luxurious house than the typical property in the area.

The Circuit Court for Anne Arundel County denied Pizza's exceptions. On June 26, 1995, Hartman and his wife, Cynthia, settled on the property; they paid the seller, the Trustee, $335,000 for the property.

We shall first address the Trustee's Motion to Dismiss this appeal as moot. According to the Trustee, the appeal should be dismissed as moot because Hartman purchased the property from the successful bidder for valuable consideration and, therefore, title to the property can no longer be affected by the reversal of an order ratifying the sale. Hartman, as counsel for the Trustee, also represents in his Memorandum in support of the Motion to Dismiss that neither he nor his wife are "the alter ego of Citizen's Bank of Maryland, a publicly traded Maryland banking corporation in which they own no stock, and are not employees, officers or trustees."

 It is generally true that "the rights of a *bona fide* purchaser of mortgaged property would not be affected by a reversal of the order of ratification in the absence of a bond having been filed." *Lowe v. Lowe,* 219 Md. 365, 368, 149 A.2d 382, 384 (1959); *see also Leisure Campground v. Leisure Estat.,* 280 Md. 220, 223, 372 A.2d 595, 598 (1977); *Sawyer v. Novak,* 206 Md. 80, 88, 110 A.2d 517, 521 (1955); *Preske v. Carroll,* 178 Md. 543, 551, 16 A.2d 291, 295 (1940); *Parker v. Columbia Bank,* 91 Md.App. 346, 374, 604 A.2d 521, 535, *cert. denied,* 327 Md. 524, 610 A.2d 796 (1992). Thus, an appeal becomes moot if the property is sold to a bona fide purchaser in the absence of a supersedeas bond because a reversal on appeal would have no effect. *Lowe,* 219 Md. at 369, 149 A.2d at 385. In order to enjoy this protection, the purchaser of the foreclosed property must be a bona fide purchaser. *See Sawyer,* 206 Md. at 89, 110 A.2d at 521. Bona fide purchaser status extends only to those purchasers without notice of defects in title, or in this case, defects in the foreclosure sale. *See, e.g, Lewis v. Rippons,* 282 Md. 155, 162, 383 A.2d 676, 680 (1978); *Grayson v. Buffington,* 233 Md. 340, 343, 196 A.2d 893, 895–96 (1964); *Blondell v. Turover,* 195 Md. 251, 257, 72 A.2d 697, 699 (1950); *Sines v. Shipes,* 192 Md. 139, 161, 63 A.2d 748, 759 (1949).

 This Court has recognized two exceptions to this general rule protecting a bona fide purchaser from reversal of the ratification of the sale in the absence of a supersedeas bond. First, a bona fide purchaser may be affected by a reversal of ratification when "there is unfairness or collusion by the purchaser in the making of the sale by the trustee." *Sawyer,* 206 Md. at 88, 110 A.2d at 521. Second, the rule does not apply when a mortgagee purchases at the foreclosure sale and exceptions are taken to the sale. *Leisure Campground,* 280 Md. at 223, 372 A.2d at 598. "This is so because a mortgagee who buys at a foreclosure sale does not free himself from the underlying dispute to which he is a party, and with the land in his hands, there is no reason why he should not be bound by a decision of the court requiring delivery of the property." *Id.*

Several of our sister states have similarly refused to find bona fide purchaser status when the subsequent purchaser of property bought at a foreclosure sale had notice of the defects of the sale. *See, e.g., Fountain v. Pateman,* 189 Ala. 153, 66 So. 75, 78 (1914); *Jackson v. Klein,* 320 S.W.2d 553, 556 (Mo.1959); *Swindell v. Overton,* 310 N.C. 707, 314 S.E.2d 512, 517 (1984); *Pender v. Dowse,* 1 Utah 2d 283, 265 P.2d 644, 648 (1954); *Miebach v. Colasurdo,* 102 Wash.2d 170, 685 P.2d 1074, 1078–79 (1984).

For example, in *Swindell v. Overton,* 310 N.C. 707, 314 S.E.2d 512, the Supreme Court of North Carolina held that the subsequent purchasers of land that was bought at a foreclosure sale "had notice of the significant defect in the proceeding" and, accordingly, were not afforded the protections of bona fide purchasers. In *Swindell,* the mortgagee commenced foreclosure proceedings on two parcels of land owned by the Swindells. The Swindells, in an effort to maximize the sale price, had requested that the Trustee, Overton, sell the two parcels separately. The Trustee apparently disregarded this request and sold both parcels together, despite the separate advertisements for the two parcels, for approximately one-third of the appraised value of the land and the crops growing on the land. *Id.* 314 S.E.2d at 517. The court held that the Trustee's disregard of the mortgagor's request concerning the conduct of the sale constituted a material and prejudicial irregularity warranting setting aside the sale. *Id.* The court also rejected the subsequent purchasers' claim that they were protected as bona fide purchasers. The court wrote:

> The Credles [the subsequent purchasers] claim the status of "bona fide purchasers for value without any notice of irregularity." The advertisement of sale itself disclosed separate debts secured by two separate deeds of trust on two separate tracts of land. We hold that the purchasers had notice of the significant defect in the proceeding.

*Id.*

■ Likewise, we conclude that Pizza's appeal is not moot. Although it is true that Hartman and the Trustee executed a

Deed for the property at a time when no supersedeas bond had been posted, under the circumstances herein, Hartman cannot be considered a bona fide purchaser. The record reflects Hartman's intimate involvement at all stages of this sale and the multiple and often ambiguous roles he played throughout this transaction. He was the attorney for the mortgagee, the Bank, while at the same time performing many of the duties to be performed by the Trustee. He was intimately involved in the drafting of the legal advertisement for the sale and he declined the auctioneer's advice to buy additional advertising for the property. Hartman's role at the auction and in the proceedings thereafter is ambiguous. He bid at the sale, despite the presence of a lending officer employed by the Bank, rendering it unclear under these circumstances whether he was bidding on his own behalf or on behalf of the bank. The documents he filed with the circuit court are also ambiguous as to the capacity in which he was acting. The Contract of Sale is unclear whether Hartman signed as an individual or as agent for the Bank. The Affidavit of Purchaser also is unclear whether Hartman was acting on his own behalf or as an agent for the Bank. The affidavit states "I am acting for myself, or, if not acting for myself, the name of my principal is Citizen's Bank of Maryland." Rule BR 6 required the purchaser to specify whether he was acting as a principal or an agent, and did not permit the straddle effected by Hartman. Under any scenario, Hartman is not a stranger to the proceedings, nor is he a bona fide purchaser.

Hartman stands in no better position than did the Bank. Given his extensive involvement with the foreclosure proceeding, his participation in preparing an inadequate advertisement, and the ambiguity as to whether he was the purchaser or agent for the purchaser, Hartman cannot be considered a bona fide purchaser for purposes of the Motion to Dismiss. *See Sawyer*, 206 Md. at 88–89, 110 A.2d at 521 (finding purchaser to be bona fide because, *inter alia*, "[i]t is not suggested that the purchaser was responsible for the alleged

defect in the advertisement"). Accordingly, the Motion to Dismiss is denied.

■ We turn now to examine Pizza's contention that the sale should be set aside. Pizza contends that the property was sold for an inadequate price. The law is well settled that inadequacy of price alone, unless it indicates fraud, unfairness or some misconduct or mistake for which the purchaser should be held responsible, ordinarily is not a sufficient ground to set aside a sale. *Arban v. Rogers,* 262 Md. 738, 740, 279 A.2d 457, 458 (1971); *Bachrach v. Washington United Cooperative,* 181 Md. 315, 322, 29 A.2d 822, 826 (1943); *Ten Hills Co. v. Ten Hills Corp.,* 176 Md. 444, 449, 5 A.2d 830, 832 (1939); *Hurlock Food Processors v. Mercantile–Safe Deposit and Trust Co.,* 98 Md.App. 314, 340, 633 A.2d 438, 451 (1993), *cert. denied,* 334 Md. 211, 638 A.2d 752 (1994). Although inadequate price alone does not ordinarily necessitate setting aside a sale, when inadequate price is coupled with other evidence of irregularity the sale may be set aside, even if the price might not shock the conscience of the court. *Long v. Worden,* 148 Md. 115, 122–23, 128 A. 745, 748 (1925); *see also Walker v. Williams,* 218 Md. 312, 316, 146 A.2d 203, 205 (1958); *Chew v. Baker,* 133 Md. 637, 642, 105 A. 756, 757 (1919); *Kauffman v. Walker,* 9 Md. 229, 236 (1856) (holding that inadequacy of sale price— under 50% of fair market value—coupled with trustees failure to bring property fairly into the market due to deficient advertising, required vitiation of foreclosure sale); *Hurlock,* 98 Md.App. at 340–41, 633 A.2d at 451. "Inadequacy of price is a strong auxiliary argument in connection with circumstances which cast doubt or suspicion upon the correctness of the sale." *Walker,* 218 Md. at 316, 146 A.2d at 205. In this regard, this Court observed in *Waters v. Prettyman,* 165 Md. 70, 74, 166 A. 431, 432 (1933):

It is settled law of this state that inadequacy of price, standing alone, is no ground for the refusal to ratify a mortgage sale, unless the price be so grossly inadequate as to, in and by itself, indicate mistake, fraud, or unfairness in the conduct of the sale. It is equally well settled that, if inadequacy of price be coupled with any irregular or faulty

advertisement or conduct in the making or manner of sale, such as indicates that the property has not been advertised or offered for sale, or sold, under conditions and circumstances that would most likely produce the largest revenue, the court will set it aside and order a resale. The test is: Was the property sold under such conditions and terms as to advertisement and otherwise, as a prudent and careful man would employ, seeking to obtain the best price for his own property. (citations omitted).

■■■■ Pizza further contends that the sale must be set aside because the advertisement was insufficient and prejudiced the sale. The advertisement is generally sufficient if it describes the property in a manner that enables it to be located by the exercise of ordinary intelligence. The failure to fully describe the nature and extent of improvements will vitiate the sale only upon a showing that the omission prejudiced the sale of the property. *Waring v. Guy*, 248 Md. 544, 548, 237 A.2d 763, 766 (1968); *Brooks v. Bast*, 242 Md. 350, 357, 219 A.2d 84, 88 (1966).

■■■■ Pizza further argues that the Trustee in this case failed to fulfill her obligations to Pizza as a junior lienholder. In the case of a foreclosure sale, the court is the vendor of the property and the trustee conducting the sale is considered to be an agent of the court. *McCann v. McGinnis*, 257 Md. 499, 505–07, 263 A.2d 536, 539–40 (1970); *Fowler v. Fitzgerald*, 82 Md.App. 166, 173, 570 A.2d 866, 869 (1990). In *Gould v. Chappell*, 42 Md. 466, 470 (1875), the Court reviewed the discretion reposed in the trustee. Our predecessors noted:

The discretion thus reposed in the trustees was not a *mere arbitrary discretion*, but a discretion *coupled with a trust*, and to be exercised solely for the benefit of *the cestuis que trust*. It was their duty, therefore, in making a sale of the property to act in a *prudent and businesslike manner*, with a view to obtain as large a price as might, with due diligence and attention, be fairly and reasonably obtainable under the circumstances. In other words, to exercise that diligence and caution which a careful and prudent owner would

observe in the sale of his own property. If the sale be made under circumstances of haste and imprudence, or if the trustees fail in reasonable diligence in inviting competition, or adopt an injudicious and disadvantageous mode of selling the property, a Court of Equity ought not ratify the sale. (emphasis in original).

In *James H. Robertson Mfg. Co. v. Chambers*, 113 Md. 232, 238, 77 A. 287, 289 (1910), in an opinion by Judge Pattison, it was said:

It was the duty of the trustee, in the sale of this property, to exercise the same degree of judgment and prudence that a careful owner would have exercised in the sale of his own property; and he was bound, for the protection of the interest of all parties concerned, to bring the property into market in such manner as to obtain a fair market price therefor.

The trustee has a duty to protect the interest of all concerned parties to the foreclosure sale and to use reasonable diligence in producing the largest revenue possible for the mortgaged property. *See Carroll v. Hutton*, 88 Md. 676, 679, 41 A. 1081, 1082 (1898); A. GORDON, GORDON ON MARYLAND FORECLOSURES § 20.05 (3d. ed. 1994). The trustee's duty extends to the mortgagor and persons claiming under or through the mortgagor to exercise the same degree of care that a prudent person of ordinary business judgment would use when selling property to see that the best price is obtained at the sale. *Webster v. Archer*, 176 Md. 245, 253–54, 4 A.2d 434, 438 (1939); *Wicks v. Westcott*, 59 Md. 270, 277 (1883).

Considering all the circumstances presented herein, we shall carefully scrutinize the sale in this case. *See Southern Maryland Oil v. Kaminetz*, 260 Md. 443, 450, 272 A.2d 641, 645 (1971). Although a mortgagee is entitled to purchase the property at a foreclosure sale in order to protect its interest in the foreclosed property, *see* Md.Code (1974, 1996 Repl.Vol.) 7–105(e) of the Real Property Article, the courts will examine the sale closely to determine whether it was proper and will exercise a greater degree of caution in passing

upon the ratification of foreclosure when the sale is to the secured party. *Walton v. Washington County Hospital Association,* 178 Md. 446, 450–51, 13 A.2d 627, 629 (1940).

We are satisfied that the property was sold for an inadequate price—a sum well below the market value. The trial judge made an explicit finding that the amount received from the sale was not grossly inadequate. Indeed, Pizza has not urged this Court to find that the price received from the sale was grossly inadequate or that the sale price alone would furnish grounds to set aside the sale. Inadequacy of price, however, has been called "a strong auxiliary argument" in connection with circumstances which cast doubt or suspicion upon the fairness of the sale. *Preske v. Carroll,* 178 Md. 543, 550, 16 A.2d 291, 294 (1940). The question then becomes: Does this inadequacy of price, when considered in connection with all the circumstances surrounding this sale, furnish sufficient grounds for setting aside the sale? We conclude that it does.

We also conclude that the advertisement in this case is inadequate. Given the special characteristics of this property, protection of the interests of all the parties required that the advertisement include the acreage and the amount of waterfront—two features that the evidence showed would be of particular significance to potential bidders. The original advertisement of the sale failed to describe significant features of the property adding to the value. The advertisement should direct the attention of the public to any unique or specially important factors connected with the property having a tendency to increase the value of the property, factors that a prudent person dealing with his or her own property would not have omitted from the advertisement. *See Kres v. Hornstein,* 161 Md. 1, 5, 155 A. 171, 173 (1931).

The property in question included 3.6 acres of waterfront property in Pasadena, an area that typically consisted of 50 foot lots improved with summer cottages. It seems unlikely that potential purchasers, after reading the advertisement, would have given the matter further consideration unless they

were personally familiar with Diemer's property. It is clear that by including this information in the advertisement the number of potential purchasers would have increased. Although the supplemental advertisement that ran one time in the *Baltimore Sun* and the *Washington Times* produced many inquiries, it ran only four days before the sale. Moreover, a supplemental advertisement cannot cure a defective legal advertisement. *Ten Hills Co.*, 176 Md. at 452, 5 A.2d at 833.

Of course, not every irregularity or deficiency in the advertising will void the sale. There can be no arbitrary rule of thumb for determining in a given case whether the description of the property in the legal advertisement sufficiently informs the buying public of the property, but that question must necessarily be decided upon the facts and circumstances of each case. *Ten Hills Co.*, 176 Md. at 450–51, 5 A.2d at 833.

We also agree with Pizza that the Trustee in this case failed to fulfill her obligation to ensure that the sale was conducted so as to maximize the price received for the property. *See Gould*, 42 Md. at 470. The trustee is bound to exercise the same degree of care, diligence and judgment in selling the property that a prudent person of ordinary business experience would exercise in selling his or her own property to the best advantage. *Ten Hills Co.*, 176 Md. at 454, 5 A.2d at 835 (citing *Webster v. Archer*, 176 Md. 245, 4 A.2d 434 (1939)).

After careful scrutiny, we hold that, based on the particular facts of this case, the Court of Special Appeals erred in affirming the circuit court's ratification of the foreclosure sale.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND TO REMAND IT TO THAT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*